Argued May 4, affirmed July 14, 1966

# STATE OF OREGON *v.* GERALD LEE GULLINGS

416 P. 2d 311

*Orlin R. Anson,* Portland, argued the cause for appellant. On the brief were Corcoran and Anson, Portland.

*Hollie Pihl,* District Attorney, Hillsboro, argued the cause for respondent. With him on the brief was Richard Smurthwaite, Deputy District Attorney, Hillsboro.

Before McALLISTER, Chief Justice, and SLOAN, GOODWIN, DENECKE, HOLMAN, SCHWAB and HAMMOND, Justices.

HOLMAN, J.

The defendant was convicted of the crime of burglary and has appealed. At the time of the commission of the crime and defendant's detention by the au-

thorities he was seventeen years of age. A deputy sheriff, armed with a detention warrant issued by the juvenile court, took the defendant into custody at school. There was evidence from which the trial court could and did find that the deputy sheriff promptly and effectively advised defendant that any information secured could be used against him in a criminal prosecution for burglary, that he was entitled to an attorney at government expense, and that he had an absolute right to remain silent. Thereafter, defendant immediately made incriminating admissions to the officer of his participation in the burglary. Defendant was taken from school to his home where he produced from his automobile a pair of binoculars taken in the burglary. His parents were not at home. He was then taken to the sheriff's office where he almost immediately signed a written confession which was found by the trial judge to have been voluntarily made. There was no protracted period of custodial questioning. Subsequently defendant was remanded to adult court for trial.[1]

Defendant's principal claim of error on appeal is that his confession was erroneously admitted into evidence. He contends that he was within the exclusive jurisdiction of the juvenile court at all times prior to his remand to adult court and that any confession secured during this period of time is inadmissible.

---

[1] ORS 419.533 "(1) A child may be remanded to a circuit, district, justice or municipal court of competent jurisdiction for disposition as an adult if:

"(a) The child is at the time of the remand 16 years of age or older; and

"(b) The child committed or is alleged to have committed a criminal offense or a violation of a municipal ordinance; and

"(c) The juvenile court determines that retaining jurisdiction will not serve the best interests of the child and the public."

■ The basic concept of the Oregon law relating to juveniles② was stated to be, by its framers in their report③ to the Governor and the Legislature of the state, as follows:

"* * * juveniles who have offended against the law or who find themselves in need of protection should be dealt with through a specialized procedure in a court which, when possible, has a judge specialized in dealing with children. The procedure is civil, not criminal, and equitable in that the remedies may be flexible and based upon 'conscience' and judgment, rather than upon more or less rigid rules of law.

"The most important respect in which the juvenile code departs from traditional legal machinery is that a child under 18 who has violated a law is dealt with, not by indictment and trial according to the criminal law, but by petition in a civil proceeding before the juvenile judge. Furthermore, the object of the proceeding is not reformation through punishment, but reformation through education, either in the child's own home, in an adoptive or foster home or in a private or public agency or training school."

The *parens patriae* theory of juvenile treatment implicit in this statement is necessarily based upon a close relationship between the child and the representatives of the court. The desired result is the child's trust and confidence in the representatives of the court and a full disclosure by the child to them. Until such a condition exists, the chances for successful and meaningful treatment on a *parens patriae* basis are minimal. The essence of such treatment is the establishment of an informal nonadversary atmos-

---

② ORS Chapter 419.

③ Report of the Legislative Interim Committee on Judicial Administration, Part II, page 11 (1959).

phere which is the antithesis of adult criminal procedure. For these reasons the child is not charged with crime and therefore is not entitled to those rights which are necessary for the protection of an accused where the state is an adversary seeking criminal sanctions. The relationship and its consequences are described as follows in the case of Holmes' Appeal, 379 Pa 599, 109 A2d 523 (1954):

> "Appellant's able counsel have urged upon us, as upon the Superior Court, many claims of illegality and deprivation of constitutional rights in connection with the proceedings before the Municipal Court. Such claims, however, entirely overlook, in our opinion, the basic concept of a Juvenile Court. The proceedings in such a court are not in the nature of a criminal trial but constitute merely a civil inquiry or action looking to the treatment, reformation and rehabilitation of the minor child. Their purpose is not penal but protective,—aimed to check juvenile delinquency and to throw around a child, just starting, perhaps, on an evil course and deprived of proper parental care, the strong arm of the State acting as parens patriae. The State is not seeking to punish an offender but to salvage a boy who may be in danger of becoming one, and to safeguard his adolescent life. * * *" 379 Pa at 603, 109 A2d at 525.

It would be inconsistent to allow admissions made by the child in a noncriminal, nonpunitive and nonadversary trustful *parens patriae* atmosphere to be used to secure criminal sanctions against him. The following is a statement from *Harling v. United States,* 111 US App DC 174, 295 F2d 161 (1961):

> "It is, of course, because children are, generally speaking, exempt from criminal penalties that safeguards of the criminal law * * * have no general application in juvenile proceedings. Aside from the requirements of expressly applicable statutes,

> the principles of 'fundamental fairness' govern in fashioning procedures and remedies to serve the best interests of the child. It would offend these principles to allow admissions made by the child in the non-criminal and non-punitive setting of juvenile proceedings to be used later for the purpose of securing his criminal conviction and punishment. * * *" 111 US App DC at 176, 295 F2d at 163.

If information secured by juvenile authorities is indiscriminately used as a basis for imposing criminal responsibility, juvenile courts can not legitimately complain if traditional criminal constitutional standards are required of them in all their proceedings. Such a result would naturally be self-defeating since there is little room for the *parens patriae* relationship to operate within the narrow confines of standards evolved for use in the adversary criminal setting.

A few courts believe the incompatability between criminal and juvenile proceedings is so great as to require, regardless of the circumstances under which they are secured, that admissions and confessions received prior to remand must be absolutely barred from use in a criminal prosecution after remand. *Harling v. United States,* supra. The prohibition was required not only by "fundamental fairness" to the child but also to preserve the independence and integrity of the juvenile system. *Edwards v. United States,* 330 F2d 849, 850-51 (DC Cir 1964).

■■ Presuming that federal constitutional Fifth and Sixth Amendment rights are granted,[⊕] we believe that an absolute prohibition is not required so long as

---

[⊕] Gideon v. Wainwright, 372 US 335, 83 S Ct 792, 9 L Ed 2d 799 (1963); Escobedo v. Illinois, 378 US 478, 84 S Ct 1758, 12 L Ed 2d 977 (1964); State v. Neely, 239 Or 487, 395 P2d 557, 398 P2d 482 (1965).

it is made clear to the juvenile that criminal responsibility can result and that the questioning authorities are not operating as his friends but as his adversaries. In the present case we believe this was made abundantly clear to the defendant.[9] The officer had been adequately trained and apparently was aware in advance that there was a possibility of a remand. His testimony indicated he was careful and specific in informing the defendant of the possible consequences.

■ We do not believe the two factors which were the concern of the court in *Harling* and *Edwards*, supra, require prohibiting the use in adult proceedings of all information secured by police before remand. No "principles of fundamental fairness" are offended when the information is secured in a setting that is so patently adversarial as to be understood by the child. The *parens patriae* relationship does not exist between police and child but between court and child. Police are in the business of solving transgressions against the welfare of society and the apprehension of those who are responsible therefor. They are not engaged in the rehabilitation of the child and the treatment of his emotional and family problems where the free exchange of information and a close relationship is so important. The use of information secured by police will not, in our opinion, tend to make more difficult the establishment of a close relationship between juvenile workers and the child.

■ Nor is the integrity of the juvenile court threatened so long as constitutional due process is required

---

[9] Since physical or psychological coercion was not involved, this case is not governed by Gallegos v. Colorado, 370 US 49, 82 S Ct 1209, 8 L Ed 2d 325 (1962); Reck v. Pate, 367 US 433, 81 S Ct 1541, 6 L Ed 2d 948 (1961); or Haley v. Ohio, 332 US 596, 68 S Ct 302, 92 L Ed 224 (1948).

whenever the police secure information which is subsequently used against the child in an adult prosecution. If information has been secured from a juvenile under the court's jurisdiction without regard for constitutional safeguards and such information is later used in an adult prosecution, the integrity of the juvenile court may be threatened. The juvenile court would then be nothing more than an adjunct to unlawful police practices.

We are not unaware that in the present case the defendant was taken into police custody by a detention warrant issued by the juvenile court. Nor are we unaware that ORS 419.573 provides that jurisdiction of the juvenile court attaches in any event from the time a child is taken into custody by the police. These are beside the point. The important factor is whether defendant could legitimately believe a protective confidential relationship existed between himself and the police. It is difficult in all circumstances to draw a line between the conflicting procedures of the adult and juvenile courts when it is not known at the time information is secured whether the child will ultimately be treated as a juvenile or as an adult. So long as information is available which meets constitutional criminal due process standards and which was not secured through the close relationship between court worker and child, the safety and security of the law-abiding public requires its use in adult criminal proceedings.[6]

---

[6] United States ex rel. Rine v. Boles, 305 F2d 375 (4th Cir), affirming 206 F Supp 380 (ND W Va), cert. den. 371 US 868 (1962); Roberts v. Beto, 245 F Supp 235 (SD Tex 1965); People v. Connolly, 33 Ill 2d 128, 210 NE2d 523 (1965); Hayden v. State, 199 NE2d 102, 201 NE2d 329 (Ind 1964); Michaud v. State, 215 A2d 87 (Me 1965); State v. Stewart, 176 Ohio St 156, 198 NE2d 439, cert. den. 379 US 947 (1964).

Appellant does not contend that ORS 419.567 (3) is applicable to the present case. However, it is proper to discuss the statute because of defendant's general contention that the confession is not admissible. The statute provides as follows:

"No information appearing in the record of the case or in reports or other material relating to the child's history or prognosis * * * may be used in evidence in any proceeding to establish criminal or civil liability against the child, whether such proceeding occurs after the child has reached 18 years of age or otherwise, except for the following purposes:

"(a) In connection with a presentence investigation after the guilt of the child has been admitted or established in a criminal court.

"(b) In connection with a proceeding in another juvenile court concerning the child or an appeal from the juvenile court."

The following reason was given for subsection (3), quoted above, by the committee that drew the act.[0]

"Subsection (3) of section 46 is designed to assure maximum disclosure of facts in the juvenile court. It provides that information brought out in the juvenile court may not be used as evidence elsewhere in any civil or criminal proceeding against the child. There are two exceptions to this: * * *"

■ We do not believe it was the intention of the legislature to include within the prohibition of the statute information secured through investigatory activities of the police. *People v. Connolly,* 33 Ill 2d 128, 210 NE2d 523, 525 (1965). If this were so, there would be little point in the legislature also providing for re-

---

[0] Report of the Legislative Interim Committee on Judicial Administration, Part II, page 26 (1959).

moval for trial as an adult in criminal court as there would be little chance of conviction. The statute sought to promote the *parens patriae* relationship between the juvenile court and the child by encouraging the free exchange of information. As previously pointed out, the *parens patriae* relationship does not exist between police and child but between court and child. The purpose sought to be accomplished by the enactment of the statute would not be promoted by throwing the mantle of the statutory prohibition over information secured by lawful police investigatory practices. The statute does not prohibit the use of the confession.

■ It might be argued that a juvenile does not have sufficient understanding to judge whether the situation was adversarial or to intelligently and knowingly waive his right against self-incrimination and his right to be represented by counsel. *McWilliams v. Gladden*, 242 Or 333, 407 P2d 833 (1965). However, the evidence indicates that defendant understood all that was said to him and that he knowingly and freely waived his rights. He was 17 years of age and a high school student apparently possessing average intelligence. Furthermore, defendant did not dispute the police officer's testimony. He did not testify that he was misled or that he did not understand the consequences that could result from the admissions and confessions made by him or that oppressive tactics were used. The admissions and the confession of defendant were admissible. It can not be said that a juvenile can not waive constitutional rights as a matter of law. It may be more difficult to prove because of his age, but it is a factual matter to be decided by the trial judge in each case.

■ Defendant contends that the trial judge must make an independent finding that defendant's consti-

tutional rights were protected in addition to making a finding as to the voluntariness of the confession. The trial judge made the following statement in the record:

> "It will be the ruling of the Court that * * * the defendant was effectively advised of his right to counsel and that he was adequately advised as to his right to remain silent and the fact that if he made a statement that it could be used against him and that he didn't have to make a statement until he had legal counsel."

This clearly indicates the judge did make a finding.

■ Defendant finally contends the binoculars were secured by illegal search and seizure. The officer did not search the premises. The defendant produced the binoculars himself and gave them to the officer. There was no illegal search and seizure.

The judgment of the trial court is affirmed.