Argued December 3, 1968, affirmed April 30, 1969

IN THE MATTER OF ANTONIO ARENAS, A CHILD
STATE OF OREGON, *Respondent, v.*
ANTONIO ARENAS, *Appellant.*
453 P2d 915

*Jerome L. Noble,* Dallas, argued the cause and filed a brief for appellant. With him on the brief were Hayter, Shetterly & Noble, Dallas.

*John L. Snyder,* Deputy District Attorney, Dallas, argued the cause for respondent. On the brief was Marvin J. Weiser, District Attorney, Dallas.

Richard H. Muller, Portland, filed a brief for American Civil Liberties Union of Oregon as amicus curiae.

Before PERRY, Chief Justice, and SLOAN, O'CONNELL, GOODWIN, DENECKE, HOLMAN and LANGTRY, Justices.

DENECKE, J.

A petition was filed in the juvenile department of the circuit court charging that Antonio Arenas, age 16, was within the jurisdiction of the court because he violated the law by committing an assault with a dangerous weapon. A hearing was held by the juvenile court and the court found Arenas did commit the act charged, and he was committed to MacLaren School for Boys.

The child has appealed, contending, first, that the juvenile court erred in finding merely "by a preponderance of the evidence" that the child committed the act charged. The child's position is that before the juvenile court can gain jurisdiction over a child charged with being delinquent it must find *beyond a reasonable doubt* that the child committed the act. He further contends that ORS 419.500, which provides that the court need find that the child committed the alleged delinquent act, only by a preponderance of the evidence, is contrary to the Due Process Clause of both the federal and the state constitutions and the Equal Protection Clause of the federal constitution.

■ The first question is whether an adult charged with a crime has a right under the state and federal constitutions to be found guilty only if the fact finder finds beyond a reasonable doubt that he committed the act charged. Such right is granted by statute, ORS 136.520, but it is not specifically stated in either constitution. We have not held that it is a constitutional right. Nevertheless, we believe such right is one inherent in the Due Process Clause of both constitutions.[1]

In *Leland v. Oregon*, 343 US 790, 802-803, 72 S Ct 1002, 96 L Ed 1302 (1952), Mr. Justice Frankfurter in dissenting stated:

> "* * * [F]rom the time that the law which we have inherited has emerged from dark and barbaric times, the conception of justice which has dominated our criminal law has refused to put an accused at the hazard of punishment if he fails to remove every reasonable doubt of his innocence

---

[1] We do not find so holding inconsistent with the Oregon constitutional provision permitting criminal convictions by less than a unanimous verdict. State v. Larson, 252 Or 624, 450 P2d 754 (1969).

> in the minds of jurors. It is the duty of the Government to establish his guilt beyond a reasonable doubt. This notion—basic in our law and rightly one of the boasts of a free society—is a requirement and a safeguard of due process of law in the historic, procedural content of 'due process.' * * * *"

The majority in that case did not disagree with that statement.

In a recently published casebook the section on the state's burden of proof commences with this sentence: "An indispensable element of 'due process' is the requirement that guilt be proved 'beyond a reasonable doubt.'" 2 Inbau, Thompson and Sowle, *Cases and Comments on Criminal Justice* (3d ed 1968), 1145.

In all the decisions on the issue of the burden of proof needed in juvenile proceedings, it is assumed that an adult charged with a crime has the right to be convicted only by proof beyond a reasonable doubt.

The next question is, does a juvenile charged with delinquent behavior have such right?[2]

In *State v. Thornton*, 246 Or 377, 425 P2d 529 (1967), we affirmed a finding by the juvenile court that the delinquent act had been committed when the juvenile court expressly based its finding upon a preponderance of the evidence. No one questioned, however, the amount of proof required; therefore, the question has not been decided.

*In re Gault*, 387 US 1, 87 S Ct 1428, 18 L Ed2d 527 (1966), does not expressly decide this issue. The juvenile's counsel strongly urge that implicit in the decision in *Gault* is the requirement that the requirement of proof beyond a reasonable doubt is applicable

---

[2] *Quantum of Proof in Delinquency Hearings,* 5 Willamette L J 149 (1968).

to the adjudicatory portion of a juvenile delinquency proceeding. The majority stated in *Gault* that "the Due Process Clause has a role to play" in the process of adjudicating when the juvenile has committed alleged misconduct. 387 US at 13. The Court specifically held that the Due Process Clause required: "1. Notice of the charges; 2. Right to counsel; 3. Right to confrontation and cross-examination; 4. Privilege against self-incrimination;  *  *  *." 387 US at 10.

Other jurisdictions have divided upon whether *Gault* requires a juvenile to be proved a delinquent beyond a reasonable doubt. California held it did not. *In re M.,* — Cal App2d —, 75 Cal Rptr 1, 450 P2d 296 (1969) ; *In re Wylie* (DC Mun App 1967), 231 A2d 81, accord. Illinois held it did. *In Re Urbasek,* 38 Ill 2d 535, 232 NE2d 716, 718-720 (1968). Accord, *Santana v. State,* 431 SW2d 558 (Tex Civ App 1968). See, also, *United States v. Costanzo,* 395 F2d 441, 444-445 (4th Cir 1968) ; and *Debacker v. Brainard,* 183 Neb 461, 161 NW2d 508 (1968).

Individual writers and agencies and commissions also differ on the necessity and advisability of such a proof requirement. See Task Force Report: Juvenile Delinquency and Youth Crime, The President's Commission on Law Enforcement and Administration of Justice, pp 35, 103 (1967).

We do not have a choice. The legislature has already made the decision. Our only task is to determine whether or not the legislative decision is consistent with the state and federal constitutions.

As we view the problem, it does not concern merely certain procedures in juvenile proceedings. The question really is, does the decision in *Gault* permit the states to retain the one remaining basic concept of

juvenile law which is unique to juvenile law? That concept is that it is essential that the juvenile court can and should acquire jurisdiction over a juvenile when the juvenile has evidenced symptoms that indicate that unless the court intervenes the juvenile is likely to engage in conduct detrimental to himself and to the community. ORS 419.476(1) provides:

"(1) The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"(a) Who has committed an act which is a violation, or which if done by an adult would constitute a violation of a law or ordinance of the United States or a state, county or city; or

"(b) Who is beyond the control of his parents, guardian or other person having his custody; or

"(c) Whose behavior, condition or circumstances are such as to endanger his own welfare or the welfare of others; or

"* * * * *

"(f) Who has run away from his home."

As the statute indicates, the child's symptoms must constitute certain specified conduct before the court can acquire jurisdiction. However, as subsections (b), (c) and (f), beyond parental control, endangering self or others, and runaway, illustrate, the requisite conduct is more symptomatic than "criminal." Even subsection (a), acts which would be crimes if committed by adults, is intended to have this same characteristic.

The Legislative Interim Committee which recommended the juvenile code, including the above-quoted statute, stated concerning subsection (a): "The inclusion of violations of laws of other jurisdictions, though inconsistent with ordinary criminal law, is consistent with the juvenile law's purpose to deal with the

child because he needs corrective treatment, not, because he is 'guilty' of a 'crime.' "

■ It is true that in order to obtain jurisdiction by subsection (a) it must be proved by some degree of evidence that the juvenile committed some act. *State v. Williams,* 241 Or 207, 405 P2d 371 (1965). The degree of proof that should be required, however, is closely related to the basic philosophy of juvenile law "to deal with the child because he needs corrective treatment, not because he is 'guilty' of a 'crime.' "

Today this is the only respect in which the criminal law differs materially from the juvenile law. Aspects of the juvenile law which at its inception made it substantially different from the criminal law are now also present in the criminal law as it exists today in Oregon. Today in the criminal law as well as in the juvenile law the court attempts to find out as much as possible about the individual defendant before making any disposition of the case. In the criminal law as well as the juvenile law the court makes a disposition which is most likely to rehabilitate the individual and permanently remove him from the ranks of crime. Probation is a frequent disposition for first-time adult offenders. If it is necessary to confine adults found guilty of crimes, generally, the young adults and first-offenders are at least initially confined in a different institution than that in which the more habitual offenders are confined. ORS 137.124.

This basic philosophy of the juvenile law,—that the child should come under the jurisdiction of the court because he needs corrective treatment, not because he is guilty of a crime,—is nationwide and not confined to Oregon. The California court expressed this philosophy as follows:

"Although the consequences of adopting the rea-

sonable doubt standard in juvenile court would perhaps be less drastic than adopting a jury system, to do so would nevertheless introduce a strong tone of criminality into the proceedings. The high degree of certainty required by the reasonable doubt standard is appropriate in adult criminal prosecutions, where a major goal is corrective confinement of the defendant for the protection of society. But even after *Gault,* as we have seen, juvenile proceedings retain a *sui generis* character: although certain basic rules of due process must be observed, the proceedings are nevertheless conducted for the protection and benefit of the youth in question. In such circumstances, factors other than 'moral certainty of guilt' come into play: e.g., the advantages of maintaining a noncriminal atmosphere throughout the hearing, and the need for speedy and individualized rehabilitative services. Indeed, the youth's alleged crime may often be only the latest or most overt symptom of an underlying behavorial or personality disorder which could equally well warrant a declaration of wardship pursuant to other provisions of the code. Thus a determination whether or not the person committed the particular misdeed charged—although the very heart of an adult criminal prosecution—may not in fact be critical to the proper disposition of many juvenile cases. On the contrary, in the latter the best interests of the youth may well be served by a prompt factual decision at a level short of 'moral certainty.' " *In re M.,* supra (450 P2d at 302-303).

A critic of juvenile procedures stated the proposition in an exaggerated fashion but in a manner which describes the underlying purpose thusly:

   "* * * The aim, too, is to break with the legal approach of adjudging defendants on the proof of a given criminal act, holding it more scientifically appropriate to determine through social and biological information whether a case needs treat-

ment and, if so, what sort is required. To the socially minded it may appear absurd to concentrate attention upon a criminal act when it is itself merely a symptom or end product of character drives conditioned through extended experience. The need, it may be claimed, is to view rather the area of true significance—the defendant's total personality—in order to deal correctly with the case. Statutes which define the elements of a crime and establish a fixed penalty conceived by a legislature as punishment appropriate to the seriousness of that act appear as absurd relics of a classical criminology in an age when social science points toward individualization, prevention, and rehabilitation." Paul W. Tappan, *Treatment Without Trial,* 24 Social Forces, 306 (1946).

This basic premise of juvenile law is recognized in *In re Gault,* supra (387 US at 14-16). The court expressed no opinion whether all the procedures consistent with that premise were inconsistent with the federal constitution except that the court held that certain procedural safeguards, as previously specified, were required.

If the constitution requires that a juvenile cannot come within the jurisdiction of the court unless criminal conduct is proved beyond a reasonable doubt, the great juvenile experiment is over.

If such a burden of proof is constitutionally required, it logically follows that subsections (b), (c) and (f) of the statute are in violation of the constitution. Such subsections do not describe conduct which is necessarily criminal. These subsections concern delinquency, not child dependency. In the event the court finds such conduct has occurred, the legislature has empowered the juvenile court to deprive the juvenile of his freedom if that is believed desirable. ORS 419.509.

If the constitution is held to prohibit the juvenile court from depriving a juvenile of his freedom unless it is proved beyond a reasonable doubt that he committed a criminal act, the constitution would have to be interpreted to prohibit depriving a juvenile of his freedom when he was found to have engaged in conduct not amounting to a crime.

The logical end of such reasoning would be the conclusion that regardless of how apparent the need for intervention for the good of the child, the community, the judiciary and every other institution or agency would be powerless to act until and unless criminal conduct could be proved beyond a reasonable doubt.

We are of the opinion that such a result is not a requirement which logically extends from *Gault*.

The direct holding and firm implication of *Gault* is that in order for the court to acquire jurisdiction some proscribed conduct must be proved and the procedures for proving such conduct must include notice, right to counsel, right to confrontation and cross-examination and the privilege of self-incrimination. This was generally the law in Oregon, either by statute or decision, prior to *Gault*. Browne and Fort, *In Re Gault—Its Impact in Oregon*, 5 Willamette L J, 1 (1968).

The theory that some agency should have the power to intervene with juveniles when they have engaged in conduct indicating the need for such intervention has substantial and respected backing from social and behaviorial scientists. Task Force Report, Juvenile Delinquency and Youth Crime, supra, at pp 22-28.

It is true that some of the present procedures and concepts of the juvenile courts, including the treatment concept, are the subject of criticism by substan-

tial numbers of respected social and behavioral scientists. We believe it would be a serious error of judicial policy, however, to raise all aspects of such criticism to the immutable stature of constitutional deficiencies. The legislature should be given wide latitude in this troublesome area where learning is only beginning and absolutes are unknown.

■ In the first third of this century the judiciary interpreted the constitution as incorporating the judiciary's theories of economics and the proper role of government. Child labor laws, minimum wage laws, economic control laws, labor regulation laws,—all were struck down as unconstitutional because the judiciary disagreed with the economic and political theories behind such laws. Because of this experience we should realize that the constitution should not be construed as incorporating any particular theories of the social or behavioral sciences or to prohibit any widely and responsibly held methods of coping with the problems of society unless such methods necessarily and obviously violate rights which must be held to be inviolable under any circumstances.

■ The juvenile's contention that he was deprived of his constitutional rights because he was not granted a jury trial has been answered adversely in *State v. Turner*, 253 Or 235, 453 P2d 910, decided this date.

Affirmed.

O'CONNELL, J., dissenting.

However we may wish to describe that part of the procedure in juvenile cases which calls for the parens patriae approach in the relationship between judge and child it would seem undebatable that the inquiry as to whether the child committed an act deemed criminal when committed by an adult has no relationship to the

judge's function of ministering to the best interests of the child.

It is made eminently clear in *In re Gault,* 387 US 1, 87 S Ct 1428, 18 L Ed2d 527 (1967) that procedure designed to determine whether a child will be incarcerated is essentially criminal procedure. Since the procedure is criminal in nature there is as much reason to require the proof beyond a reasonable doubt in determining the guilt of a child as there is in determining the guilt of an adult.

Although the equal protection clause of the Fourteenth Amendment does not require an across-the-board similarity of criminal procedure for adults and children, that clause does require the child to have the same protection as an adult where the character of the procedure has no relationship to the ends that are served by dealing with a child in accordance with the parens patriae concept. When a child is charged with the commission of an act which is a crime if committed by an adult, the question of whether the child committed the act must be resolved by the trier of fact before the trial judge takes over and attempts to apply the theories of juvenile rehabilitation. It seems to me that this preliminary question of guilt should be determined by the same test whether the accused is an adult or a child.

The theory of the majority opinion is that the trier of fact should be permitted to more readily find the child committed the "offense" charged (we are admonished not to use the term "crime" here) so that he can be retained in court and thus be available for treatment in accordance with the theories of rehabilitation employed by juvenile courts, and if necessary be incarcerated. Since the relaxation of the burden of proof

subjects the child to the risk of incarceration it becomes an integral part of a criminal procedure which, according to the reasoning of *Gault,* must operate to protect the child to the same extent as it would an adult.

I am also of the opinion that the defendant in this case was entitled to a jury trial for the reasons stated in my dissenting opinion in *State v. Turner,* 253 Or 235, 453 P2d 910, decided this day.