Argued February 3, affirmed April 30, 1969

In the Matter of Joan Carolyn Turner, a Child
STATE OF OREGON, *Respondent, v.*
JOAN CAROLYN TURNER,
*Appellant.*

453 P2d 910

*Oscar D. Howlett,* Portland, argued the cause and filed a brief for appellant.

*Jacob B. Tanzer,* Assistant Chief Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before PERRY, Chief Justice, and McALLISTER,

Sloan, O'Connell, Goodwin, Denecke and Holman, Justices.

GOODWIN, J.

This appeal challenges, on the basis of three recent decisions of the United States Supreme Court,[1] the provision of ORS 419.498(1)[2] which denies a child a trial by jury in a delinquency hearing. A majority of this court has concluded that the statute should be considered constitutional until the United States Supreme Court holds otherwise.

Joan Turner, a 15-year-old girl, was accused by petition in juvenile court of causing the death of a woman in the course of an assault and robbery. The court conducted a hearing without a jury, and determined that Joan had committed an act which, if committed by an adult, would have been a crime (murder). The court declared her a ward of the court and committed her to the Hillcrest School. She appeals, contending that she was entitled to a trial by jury.[3]

---

[1] In re Gault, 387 US 1, 87 S Ct 1428, 18 L Ed 2d 527 (1967); Duncan v. Louisiana, 391 US 145, 88 S Ct 1444, 20 L Ed 2d 491 (1968); Bloom v. Illinois, 391 US 194, 88 S Ct 1477, 20 L Ed 2d 522 (1968).

[2] ORS 419.498(1) "The hearing shall be held informally by the court without a jury and may be continued from time to time. Unless the child or his parents otherwise request, the general public shall be excluded and only such persons admitted as the judge finds have a proper interest in the case or the work of the court. The judge may exclude the public during any portion of the hearing in which it appears that the presence of the public may embarrass a witness or party or otherwise prejudice the reception of trustworthy evidence. With the consent of the child or his parents, at any stage of the proceeding the court may separately interview the child or one of his parents."

[3] The appeal also assigns error to a denial of a motion for a public trial, but since the record discloses the presence throughout the proceedings of members of the public (representatives of the news media), there is no factual basis for this assignment, and it will be disregarded.

■ Prior to the *Gault* case, this court and a majority of courts elsewhere had held that juvenile proceedings were not "criminal" within the meaning of specific constitutional guarantees of trial by jury in criminal prosecutions. See Oregon Constitution, Art I, § 11, and United States Constitution, Amendment VI. And see *State v. Gullings,* 244 Or 173, 176-177, 416 P2d 311 (1966). We adhere to the view that juvenile proceedings are not "criminal," but this does not, of itself, end the inquiry. When liberty is at issue, due process of law must be satisfied. United States Constitution, Amendment XIV; *In re Gault,* supra. For the purposes of this case, it must be conceded that incarceration in a juvenile facility is a loss of liberty. See *In re Gault,* supra; and *Heryford v. Parker,* 396 F2d 393 (10th Cir 1968).

■ The *Gault* decision stops short of holding that trial by jury is mandatory in a juvenile delinquency hearing, and the states have had difficulty defining due process with reference to burden of proof and trial by jury, both left undecided by *Gault.* See, e.g., majority and dissenting opinions in *DeBacker v. Brainard,* 183 Neb 461, 161 NW2d 508 (1968),[⊗] and *In re M.,* — Cal 2d —, 450 P2d 296 (1969).

At least two states held, prior to the publication of the *Duncan* and *Bloom* decisions, both supra note 1, that fairness and basic procedural due process could be assured a juvenile without "the formality of a jury trial." *In re Estes,* 73 Wash 2d 263, 438 P2d 205 (1968);

---

[⊗] On February 24, 1969, the United States Supreme Court noted probable jurisdiction, and the question now before us may be answered in due course. See — US —, 89 S Ct 856, 21 L Ed 2d 770 (1969). Since we are dealing with a year or more in the life of a child, we do not believe we are at liberty to hold his case under advisement while we await the definitive federal decision.

*Commonwealth v. Johnson,* 211 Pa Super 62, 234 A2d 9 (1967). After *Duncan* and *Bloom, Dryden v. Commonwealth,* Ky, 435 SW2d 457 (1968), also held that a jury trial was not essential to due process in juvenile court. The contrary view has been taken in New Mexico. The New Mexico court construed local law and did not rest its decision upon the Fourteenth Amendment. See *Peyton v. Nord,* 78 NM 717, 437 P2d 716 (1968).

Under ORS 419.533(1), Oregon courts have the discretionary power to allow a jury trial for a child 16 years of age or older by remanding the child to the circuit court to be tried as an adult. The state usually initiates the remand when the gravity of the offense charged and other facts make such a remand advisable. Moreover, because such a remand carries with it the pains and penalties of the criminal law as well as the procedural safeguards thereof, demand by children for jury trials in the criminal court has not been a common phenomenon. Indeed, in one recent case, a child who had been remanded for trial as an adult unsuccessfully challenged the constitutionality of his remand under ORS 419.533(1), claiming that the remand denied him due process of law as a child. See *State v. Little,* 241 Or 557, 407 P2d 627 (1965), cert. denied, 385 US 902 (1966). And see *Kent v. United States,* 383 US 541, 86 S Ct 1045, 16 L Ed 2d 84 (1966), holding that procedural due process must be afforded the child prior to the decision to remand him to criminal court.

The crucial distinction between juvenile and other loss-of-liberty cases is that the juvenile law is dealing with a child and not with an adult. The difficult problem, therefore, is whether the court can give the child all the rights of an indicted adult without at the same

time abandoning the *parens patriae* concept of juvenile justice which has evolved during the past century.

It would be simple, by striking down the juvenile code, to return the accused child to the criminal courts and thereby afford him the full range of constitutional due process which accompanies a criminal trial. The juvenile then would be entitled to indictment, bail, and all the other rights of an adult. But the *Gault* case recognized that, despite its faults when loosely administered, the *parens patriae* concept has some residual validity, and expressly refrained from a "root and branch" extirpation of the separate juvenile system.

■ The *Gault* case held that due process, when applied to a child in a delinquency proceeding, included (1) notice of the specific charge and a reasonable opportunity to prepare a defense; (2) notice of the child's right to the assistance of counsel; (3) comprehensive advice on the privilege against self-incrimination; and (4) confrontation and cross-examination.

The *Gault* case did not discuss the matter of trial by jury, apparently because it had not been raised in the Arizona courts. The majority opinion refrained from expressing prophetic views on any matters not before the court. The concurring opinion of Mr. Justice Black contains the court's only expression of a view that all of the procedural guarantees of the federal Bill of Rights apply across the board to juveniles. And even that opinion, in its failure to mention the right of trial by jury while enumerating other rights, could have been intentionally silent on the point.

It is argued that even though *Gault* is silent on the right of a juvenile to have the jurisdictional facts in his case found by a jury, the *Duncan* and *Bloom* cases compel the conclusion that trial by jury is so

fundamentally a part of due process that it is no longer open to a state court to hold otherwise. In any punitive proceeding[®] in which liberty for a substantial length of time is in jeopardy, the *Duncan* and *Bloom* decisions squarely hold that an adult is entitled to a jury.

The *Duncan* decision requires a jury when an adult faces a loss of liberty lengthy enough to be called "serious" (in that case, two years). Regardless of the name given the proceeding, *Duncan* tells us, the threat to liberty invokes a Fourteenth Amendment right to due process.

The *Bloom* case, dealing, like Duncan, with an adult, holds that due process requires a trial by jury in a state proceeding to imprison a lawyer for a criminal contempt of court. *Bloom* reinforces the *Duncan* proposition that it is the loss of liberty, rather than the name given either to the proceedings or to the offense, which determines whether a jury is necessary to satisfy the demands of due process.

The general language used in *Gault, Duncan,* and *Bloom* thus would be broad enough to justify an anticipatory holding that due process includes the right to trial by jury when a child, as well as an adult, faces a substantial loss of liberty. But the general language in these cases has not answered the functional question whether the difference between a child and an adult justifies a difference in the analysis of the role of the jury as a fact-finding instrument.

■ Adverting again to the fundamental fact that we are dealing with children and not with adults, the ultimate question in a juvenile proceeding is not one

---

[®] Mental hearings involve loss of liberty but are not ordinarily thought of as requiring all the due-process guarantees accorded criminal trials. But see Heryford v. Parker, supra.

of "guilt" or "innocence," but rather one of determining what is in the best interest of the child.

Many thoughtful students of behavior and rehabilitation believe there are valid policy reasons for holding that due process, when applied to children, does not necessarily include the right to have a jury pass upon the question of fact which must lie at the threshold of juvenile wardship.[◎]

■ Regardless of the veneration in which Anglo-American law rightly holds the jury as an instrument of criminal justice, it must be remembered that crime and punishment are not the primary business of the juvenile court. There is reason to question whether a jury trial is the most trustworthy instrumentality for protecting the rights of the child, his parents, and the state in a proceeding intended to salvage a child, if he is in need of governmental control.

One of the principal reasons for retaining trial by jury in the administration of criminal justice has been the desire of American society to mitigate the letter of the criminal law. When the question is "guilt" or "innocence," the people feel more secure in their confrontations with the government when a jury is present. The jury brings to its work in a criminal case a combination of sentiment and common sense. Frequently, the jury views the state with healthy skepticism, and tempers justice with subjective values for which no provision had been made in any statute. As Mr. Justice Holmes observed in *Horning v. District of Columbia,* 254 US 135, 138, 41 S Ct 53, 65 L Ed 185 (1920), "* * * the jury has the power to bring

---

[◎] The President's Comm'n on Law Enforcement and Administration of Justice, Task Force Report: Juvenile Delinquency and Youth Crime 38 (1967); Paulsen, *Fairness to the Juvenile Offender,* 41 Minn L Rev 547, 559 (1957).

in a verdict in the teeth of both law and facts." .The ad hoc legislative contribution of the jury system to the criminal law might enhance an occasional case involving the wardship of a child. But it is not certain that broad generalizations equating adult and juvenile cases are justified. If the fact-finding process before the judge is conducted in a fair and trustworthy manner without a jury, it is arguable whether the clash and clamor of a jury trial would enhance the rehabilitation of a child. See, e.g., discussion in *Dryden v. Commonwealth,* supra, and *In re Estes,* supra.

We recognize the distinction between the adjudicative phase of a juvenile case and the dispositional phase. We are also aware that it is possible to utilize the jury in the first phase and to exclude it from the second. There is reason to believe, however, that, at least in cases of first offenders and of other children who have not yet embarked upon a criminal career, the adjudicative phase of their court experience presents an important rehabilitative opportunity. See Note, *Rights and Rehabilitation in the Juvenile Courts,* 67 Colum L Rev 281, 283, 289, 321, 325 (1967) (internal evidence indicates, however, that this article was written before the Court published its decision in *Gault*).

The imponderable question, of course, is whether there is any substantial danger that a child brought before a court without a jury would be found "in need of wardship" when in fact he had not committed the act charged. The concomitant question is whether the presence of the jury in the case would contribute a sufficiently substantial reduction in the margin of error to outweigh the possible harm to the child from participation in the drama of a criminal trial.

During the evolution of separate courts for juveniles, the nation's legislative bodies considered all the arguments for and against jury trials in such cases. The possible danger of "convicting the innocent" undoubtedly weighed heavily in legislative deliberations. Unfortunately, however, no objective data have been found to answer the question whether such a danger exists. A dozen of the states and the District of Columbia have elected to provide jury trials for children. See Note, *A Due Process Dilemma—Juries for Juveniles,* 45 N Dak L Rev 251, 258 (1969). The majority of the states have decided that jury trials in juvenile cases would do more harm than good. While virtually all these legislative decisions antedated *Gault,* the legislators must have believed that the danger of a miscarriage of justice in the absence of a jury was remote.

■■ Our own Legislative Assembly incorporated the majority view in a new juvenile code in 1959, after a comprehensive study of the available materials in the field. Before this court overturns the considered judgment of our Assembly on this matter, it should be convinced that trial by jury, while indispensable as a part of criminal due process, is also a more trustworthy, more fair, and more beneficial method for discovering the truth in juvenile cases than trial by the judge alone. Counsel have provided us with no data, and we have found none, relevant to the peculiar problems of children which would justify a holding at this time that due process of law cannot be afforded children without the intervention of a traditional jury as employed in criminal cases.

There was no error in overruling the motion for trial by jury.

Affirmed.

O'CONNELL, J., dissenting.

*Duncan v. Louisiana,* 391 US 145, 88 S Ct 1444, 20 L Ed2d 491, 499 (1968) holds that "the right to a jury trial in serious criminal cases is a fundamental right and hence must be recognized by the states as part of their obligation to extend due process of law to all persons within their jurisdiction."

*In re Gault,* 387 US 1, 87 S Ct 1428, 18 L Ed2d 527 (1967) makes it clear that juvenile proceedings are essentially criminal in nature and that they must measure up to the essentials of due process, including the safeguards enumerated in the majority opinion in the present case. Once it is established that the juvenile accused is entitled to safeguards specified in *Gault* it would follow that he is entitled to the due process safeguard of trial by jury unless there is some reason for making an exception in the latter case.

The majority excepts trial by jury from the due process requirement as applied to juveniles on the ground that "the ultimate question in a juvenile proceeding is not one of 'guilt' or 'innocence' but rather one of determining what is in the best interest of the child." *Gault,* as I understand it, speaks to the contrary; it says plainly enough that "guilt" or "innocence" *is* the ultimate question in proceedings where the juvenile is subjected to the risk of the penalty of incarceration and that when a child is subjected to such proceedings without the specified due process requirements it is no answer to say that the elimination of these requirements is necessary to serve "the best interest of the child."

The majority constructs its whole argument upon a premise which is wholly inconsistent with the rationale of *Duncan.* That rationale is that "A right to

jury trial is granted to criminal defendants in order to prevent oppression by the Government." 20 L Ed2d at 499. The Court further explains: "The framers of the constitution strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased or eccentric judge." 20 L Ed2d at 500. The danger of arbitrary, corrupt or biased action is just as great in juvenile proceedings as it is in adult proceedings. *Duncan* also says that if the accused prefers "the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge," he is entitled to it. *Id.* at 500. The majority opinion in the present case says that a child is not entitled to this tempering effect of the jury. It is not made clear why he is not so entitled. Apparently the majority intend to say that a sympathetic jury may find the child not guilty and as a consequence the trial judge will lose his "parens patriae" control over the child, thus thwarting judicial efforts to rehabilitate him. This is just another form of the "parens patriae" justification for denying due process which was rejected in *Gault*.

Finally, the majority seems to argue that "the clash and clamor of the jury trial" is incompatible with the parens patriae procedure employed by juvenile courts. *Gault* assures the juvenile the right to inject into the proceeding all of the "clash and clamor" of an adversary proceeding that his counsel wishes to employ in asserting the due process rights specified in that opinion. *Gault* having permitted these inroads upon the traditional rehabilitative process, the basic character of the courtroom setting is changed from one of

quiet communion between judge and child to that of an adversary arena of the ordinary lawsuit if the child or his parents so elect. Once the proceedings have been changed into a trial directed by counsel the parens patriae function of the trial judge is pretty nearly eliminated at the adjudicatory stage whether the trial is with or without a jury.