Argued September 20, reversed and remanded October 12, petition for rehearing allowed November 22, argued on rehearing December 21, 1972, former opinion adhered to as modified, remanded for further proceedings March 12, petition for review denied June 12, 1973

## STATE ex rel JUVENILE DEPARTMENT OF COOS COUNTY, *Respondent, v.* DION ARTHUR WELCH (No. 8080), *Appellant.*

501 P2d 991
507 P2d 401

402

*Elden M. Rosenthal,* Portland, argued the cause for appellant. On the brief were Pozzi, Wilson & Atchison and Garry L. Kahn, Portland.

*Robert E. Brasch,* District Attorney, Coquille, argued the cause for respondent. With him on the brief was Richard L. Barron, Assistant District Attorney, Coquille.

Before SCHWAB, Chief Judge, FOLEY and THORNTON, Judges.

REVERSED AND REMANDED.

FOLEY, J.

On September 28, 1971, a petition was filed in the Coos County Court, Juvenile Department, alleging that Dion Arthur Welch, age 13, murdered another boy by shooting him with a shotgun. On September 29, 1971 an amended petition was filed in the same court alleging essentially the same facts. On November 22, 1971, the petitioner moved for permission to file a second amended petition and for an extension of 60 days in which to bring the matter before the court.[1] The court granted the motion, ordering that a new petition be filed by November 30, 1971, and that the

---

[1] This procedure was mandated by the Oregon Supreme Court in State v. Zauner, 250 Or 96, 441 P2d 81 (1968).

.time for hearing the matter be extended to January 25, 1972.

On January 4 and January 6, 1972, motions were filed on behalf of the child to dismiss the petitions based on the fact that no summons or certified copy of the petition had been served on the boy or his parents.[2] These motions were heard on January 6,

---

[2] The relevant statutes are:

ORS 419.486:

"(1) Promptly after the petition is filed, there shall be an investigation of the circumstances concerning the child. No later than 60 days after the petition is filed, summons may be issued.

"(2) The summons shall be signed by a counselor or some other person acting under the direction of the court and shall contain the name of the court, the title of the proceeding and, except for a published summons, a brief statement of the substance of the facts required by paragraph (b) of subsection (2) of ORS 419.484. Summons published as provided in paragraph (c) of subsection (2) of ORS 419.488 shall contain the name of the court, the title of the proceeding and the statement mentioned in that paragraph.

"(3) The summons shall require the person or persons who have physical custody of the child to appear personally and bring the child before the court at the time and place stated in the summons. The time for the hearing on the petition shall be fixed at a reasonable time, not less than 24 hours, after the issuance of the summons. If it appears to the court that the welfare of the child or of the public requires that the child immediately be taken into custody, the court may endorse an order on the summons directing the officer serving it to take the child into custody.

"(4) If the child is not in the physical custody of both parents, or the child's only living parent, or, if both parents are dead, the child's guardian, then summons shall also be issued to the parent or parents or guardian, as the case may be, notifying him or them that he or they may appear personally before the court at the time and place stated in the summons, to the end that both parents or the guardian, or both, may be brought before the court.

"(5) If the child is 12 years of age or older, a certified copy of the summons shall be served upon the child. .

1972. After being advised that the parents had been served that morning but that the boy had not been served, the court ordered a recess and ordered that the sheriff be called to serve him during the recess. Thereafter, motions on behalf of the child to dismiss were denied. At the same hearing a jury trial was requested for the child and this request was also denied.

On January 10, 1972, the proceedings against the boy were continued. At that time the petition was amended by the prosecuting attorney with the consent of the boy's counsel, and service was waived as to the amendment. The amendment changed the alleged conduct from acts tantamount to first degree murder to acts tantamount to second degree murder. Counsel for the child admitted the facts as set forth in the amended petition, and further admitted that these facts brought him within the jurisdiction of the juvenile court. The court then asked the parents and the child if they were willing that the admission by the boy's counsel be made. Each stated that he was so willing, and thereupon the admission was accepted by the court.

On February 14, 1972, the court reconvened for the purpose of determining disposition of the child. The report submitted to the court by the Coos County Juvenile Department recommended placement at the Children's Farm Home in Corvallis, but the court rejected that recommendation and ordered him placed in

---

"(6) Summons may be issued requiring the appearance of any person whose presence the court deems necessary."

ORS 419.484 (3):

"A certified copy of the petition shall be served, together with the summons, upon all persons upon whom summons are served under ORS 419.486."

the custody of the Children's Services Division for placement at MacLaren School for Boys for an indeterminate term.[9]

On appeal the boy asserts that the juvenile court erred in (1) denying his motions to dismiss; (2) denying his request for a jury trial; and (3) accepting his admission of the juvenile court's jurisdiction without determining that the admission was voluntary and understanding. In addition, the child contends that the juvenile court abused its discretion in the disposition stage of the proceeding.

■ The first assignment of error asserts that the notice afforded the child was improper, and that therefore his motions to dismiss should have been granted. This assignment has no merit. A reading of the requirements of ORS 419.484 (3) and 419.486 shows that these statutes were complied with. Certified copies of the petition, together with the summons, were served upon the boy and his parents on January 6, 1972, some 38 days after the petition was filed. The time set for hearing was January 10, 1972, four days after the summons were served. Even if ORS 419.486 (3) is read to mean that the summons must be served at least 24 hours prior to the time fixed for the hearing, there was compliance in this instance.[10]

---

[9] The juvenile court's order reads, in pertinent part:
"THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Dion Arthur Welch be and hereby is committed to and placed in the legal custody of the Children's Services Division for placement at MacLaren School for Boys until Dion Arthur Welch arrives at the age of 21 years or is released according to law."

[10] The statute provides only that the summons must be *issued* not less than 24 hours before the hearing. It makes no reference as to when it must be served.
In addition, it should be noted that ORS 419.492 provides that:
"If the child is before the court, the court has jurisdiction to

It is urged on behalf of the child that even if the notice statutes were complied with, the notice afforded was deficient in light of *In re Gault*, 387 US 1, 87 S Ct 1428, 18 L Ed 2d 527 (1967). *Gault* simply established a general standard:

> "* * * Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must 'set forth the alleged misconduct with particularity.' * * *" *In re Gault*, supra, 387 US at 33.

Under the facts of *Gault*, where notice was given on the day of the hearing on the merits and the child had no counsel, the notice given was held to be constitutionally infirm.

■ In the instant case the boy was represented by counsel at least as early as October 1, 1971, and counsel made numerous motions on his behalf. Moreover, counsel indicated to the juvenile court that he was ready to try the case between Christmas and New Years. Under these circumstances it is clear that there was adequate actual notice and that the "fair treatment" mandated by *Gault* was afforded.

■ The second contention, that the trial court erred in denying the child's request for a jury trial, is also without merit. That juveniles are not entitled to trial by jury was settled by the United States Supreme Court in *McKeiver v. Pennsylvania*, 403 US 528, 91 S Ct 1976, 29 L Ed 2d 647 (1971); ORS 419.498 (1); *State*

---

proceed with the case notwithstanding the failure to serve summons upon any person required to be served by ORS 419.486 * * *.

"* * * * *"

*v. Turner,* 253 Or 235, 453 P2d 910 (1969); *State v. Arenas,* 253 Or 215, 453 P2d 915 (1969).

The third assignment of error is that the juvenile court erred in accepting the child's admission of the court's jurisdiction without determining that the admission was voluntary and understanding.

At the hearing of January 10, 1972, the prosecuting attorney, defense counsel and the representative of the juvenile department stipulated, with the court's approval, that the petition would be amended so as to allege conduct which would be tantamount to second degree murder if committed by an adult rather than conduct tantamount to first degree murder, as originally alleged. Thereafter, the following colloquy took place:

"MR. WELCH [defense counsel]: At this time, your Honor, on behalf of the defendant, Dion Arthur Welch, we admit that the facts as set forth in the Petition as amended, and as amended by interlineation, are true; and further admit that those facts define a crime or an offense, which if committed by an adult, would be a crime; and further admit that the facts as stated bring the child within the jurisdiction of this Juvenile Court.

"THE COURT: Let me ask the father. Are you willing that this admission be made on behalf of your son?

"MR. ARTHUR WELCH: I am, your Honor.

"THE COURT: Let me ask the mother. Are you willing that this admission be made on behalf of your son?

"MRS. ARTHUR WELCH: Yes, your Honor.

"THE COURT: Dion, do you admit this? Do you admit the complaint as your attorney has just said that he was going to admit for you?

"THE DEFENDANT: Yes, your Honor.

"THE COURT: All right. I will accept the admission. I believe this would establish jurisdiction.

"MR. WELCH: Yes, sir, I believe it does."

After this brief inquiry, the juvenile court set the matter for a dispositional hearing. There was no further explanation by the juvenile court at that time as to what had transpired, nor did the court amplify its earlier statements at the dispositional hearing.

■ Juvenile delinquency proceedings which may lead to commitment in a state institution must measure up to the essentials of due process and fair treatment. *In re Gault*, supra, 387 US at 30-31. We have concluded that the procedure followed in this case does not measure up to this standard.

■ Among the constitutional rights of a child in a juvenile delinquency proceeding are the right to require the state to prove its case beyond a reasonable doubt, *In re Winship*, 397 US 358, 90 S Ct 1068, 25 L Ed 2d 368 (1970), the privilege against self-incrimination, and the rights of confrontation and cross-examination. *In re Gault*, supra, 387 US at 42-57. By admitting that he committed the acts alleged in the petition and admitting that he thereby falls within the jurisdiction of the juvenile court, a juvenile waives all of those rights and the case proceeds directly to the disposition stage.

■ It is well established in Oregon that a juvenile can waive his constitutional rights if the waiver is knowingly, understandingly, and voluntarily made. *State v. Casey*, 244 Or 168, 416 P2d 665 (1966); *State v. Gullings*, 244 Or 173, 416 P2d 311 (1966); *State v. Patterson*, 5 Or App 438, 485 P2d 429, Sup Ct *review*

*denied* (1971). For a waiver to be effective under the due process clause of the Fourteenth Amendment, it must appear to be an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 US 458, 464, 58 S Ct 1019, 82 L Ed 1461, 146 ALR 357 (1938). And as the United States Supreme Court stated in *In re Gault,* supra, 387 US at 13, "* * * neither the Fourteenth Amendment nor the Bill of Rights is for adults alone."

In this case, the juvenile court made no finding that the child's admissions made through counsel were voluntary and understanding. Even if such a finding is implicit in the finding of jurisdiction, we find that the record is bare of evidence to support it, and we acknowledge that waiver of important constitutional rights cannot be presumed from a silent record. *Boykin v. Alabama,* 395 US 238, 89 S Ct 1709, 23 L Ed 2d 274 (1969).

■ The record in this case does not disclose in any way that either the boy or his parents were aware of any of the guaranteed rights which he waived through his admissions, or that either the boy or his parents were even aware of the maximum penalty which the court could impose. When these omissions are added to the fact that this was a 13-year-old boy with no previous contact with the law, it is clear that there is no basis for finding that his admission and concomitant waivers constituted "a voluntary and intelligent choice among the alternative courses of action open to [him]." *North Carolina v. Alford,* 400 US 25, 91 S Ct 160, 27 L Ed 2d 162 (1970).

■■ Petitioner seems to argue in its brief that because a "plea bargain" was evident, the juvenile court had no responsibility to determine whether the child's

admissions were voluntary and understanding. This is not the case. A "plea bargain," if one exists, is a vital element to be considered in such a determination. In the present case it appears that an "understanding" between the parties was the primary consideration in his admission.[9] If this was the case, the court's failure to inform the child and his parents that the court was not bound by such "understanding" would also be relevant to a determination as to whether the admissions were intelligently made.

Because of the view we have taken of this case, we do not reach defendant's final assignment of error relative to disposition.

Reversed and remanded.

## ON PETITION FOR REHEARING

---

[9] The juvenile department recommended to the court that the boy be placed at the Children's Farm Home in Corvallis, and defense counsel argued at the disposition hearing that this be done. When the court rejected the recommendation and ordered that he be placed in the custody of the Children's Services Division for placement at MacLaren School for Boys, defense counsel immediately indicated his intention to appeal.

*Elden M. Rosenthal,* Portland, argued the cause for appellant. On the brief were Pozzi, Wilson & Atchison and Garry L. Kahn, Portland.

*Robert E. Brasch,* District Attorney, Coquille, argued the cause for respondent. With him on the brief was Richard L. Barron, Assistant District Attorney, Coquille.

Before SCHWAB, Chief Judge, and LANGTRY, FOLEY, FORT and THORNTON, Judges.

FOLEY, J.

Former opinion adhered to except as herein modified.

■■ We realize that recognition by this court of the requirement that a waiver of rights by a juvenile must appear in the record will in some instances place further burdens on juvenile courts. In our original opinion

we held that the child must be apprised of and understand the legal consequences of his admission of jurisdiction. We point out that this inquiry into the knowing and voluntary nature of the admission of jurisdiction will and should vary depending on the circumstances of the case, the age and intelligence of the child, as well as other factors which we decline to attempt to enumerate. As we said in *Raisley v. Sullivan,* 8 Or App 332, 336, 493 P2d 745, Sup Ct *review denied* (1972):

> "* * * [W]e decline to impose a rigid formula on our own courts. The judge who accepts a guilty plea must have sufficient latitude to tailor his questions to the needs of the defendant before him.
> "* * * [T]he record must contain an affirmative showing of the voluntariness of the plea." (Emphasis omitted.)

Rather than reverse we remand this case for further proceedings. Our former opinion held that the record did not disclose a knowing and voluntary waiver of rights. It may be that additional evidence would disclose a knowing and voluntary waiver. If so, the entry of the plea was valid. If not, the plea itself must be set aside for further proceedings consistent with this and our former opinion.

■ The assignment of error that the court abused its discretion in placing the child in MacLaren we find to be without merit.

Former opinion adhered to as modified. Remanded for further proceedings.

FORT, J., concurring.

In addition to the due process problems this case presents in the context of the Fifth and Fourteenth Amendments, there is also directly involved a Sixth

Amendment question concerning not the right to but the adequacy of counsel.

Examination of the record here shows the child was represented by privately retained counsel. In effect, as appellant here would have us do, to presume from a record silent as to certain rights that highly qualified and experienced counsel have so failed in the discharge of their professional responsibility to a client as to justify an appellate court in concluding that as a matter of law they had failed to advise their client of such rights as confrontation, cross-examination or others constitutionally guaranteed is neither constitutionally required nor warranted as a matter of court policy nor pursuant to legislative enactment.

The record here shows a most diligent exploration of and insistence upon the rights of the child by his counsel from the beginning of the case to the time of judgment. Not only were a number of motions filed, argued, considered and ruled upon prior to the entry of the plea, but these were frequently conducted in open court in the presence of the child and his parents. Such diligent representation occupied more than four months of time prior to the judgment, and more than three prior to the admission by the boy of the charges in the amended petition.

*McKeiver v. Pennsylvania,* 403 US 528, 91 S Ct 1976, 29 L Ed 2d 647 (1971), makes it clear that the beacon light which guides the judge in determining whether or not the constitutional rights of a child in the adjudicative phase of a juvenile court proceeding under ORS 419.476(1)(a) have been met is that of fundamental fairness.

Essentially, then, it seems to me, the question

remains, whether, under concepts of fundamental fairness, this child and his parents were apprised of those rights which the law requires before a court can conclude that his waiver thereof was a voluntary and knowing one.

What transpired here is that as a result of plea bargaining following lengthy negotiations between counsel, the child and his parents agreed to enter of record his admission of the facts set out in the amended petition. Both counsel expressly agreed in open court in the presence and with the expressed agreement of both parents and child not only that those allegations charged murder in the second degree but that as a result of the proceedings, set forth in the previous opinion, the court had jurisdiction to proceed to the dispositional stage.

We know that following the preparation and filing of the social history and the recommendation to the judge by the state, through its court juvenile staff, for commitment to the Children's Farm Home, the trial judge rejected that recommendation and imposed judgment requiring commitment to the Corrections Division for placement at the MacLaren School for Boys, the state training school for boys. No claim is made of any violation by the state of the plea bargain.

No request to withdraw the plea was made at any time prior to the imposition of judgment. The challenge to the adjudicative procedures thus comes only by way of appeal from the disposition adjudged.

In *Santobello v. New York,* 404 US 257, 92 S Ct 495, 30 L Ed 2d 427 (1971), the Supreme Court strongly approved of "plea bargaining," stating:

"Disposition of charges after plea discussions

is not only an essential part of the process but a highly desirable part for many reasons. * * *

"However, all of these considerations presuppose fairness in securing agreement between an accused and a prosecutor. * * *

"This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. * * *" 404 US at 261-62.

The court then remanded the case to the state court to consider "whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, *i.e.*, the opportunity to withdraw his plea of guilty." 404 US at 263.

More recently in *Dukes v. Warden,* 406 US 250, 92 S Ct 1551, 32 L Ed 2d 45 (1972), the court considered the nature of alleged inadequate or improper representation of a criminal defendant by his attorney in connection with entry of a plea of guilty. There the defendant had sought to withdraw his plea prior to sentence after he had employed new counsel. The trial court denied his request and imposed judgment. Later he sought habeas corpus alleging a conflict of interest on the part of the attorney who had represented him at the time of plea. He had made no such claim at the time he sought to change his plea nor at the time of sentence. The Supreme Court upheld denial of the writ. In his concurring opinion Mr. Justice Stewart pointed out:

"Thus, I agree with the Court that the petitioner's claim should be evaluated under the standards governing an attack on a guilty plea made after judgment, not under the far different standards governing a motion to withdraw a plea made before

judgment has been pronounced. I also agree with the Court that, evaluated under the former standards, the petitioner's claim of involuntariness attributable to his counsel's conflict of interest lacks merit." 406 US at 258.

Against this background, including the careful and diligent representation of the child by able and experienced private counsel throughout, I agree that in this attack made after judgment the fundamental fairness to which the child is entitled requires only that this matter be remanded to the trial court in order to permit it to take testimony to determine whether or not there was the knowing voluntary waiver of each of the rights guaranteed the child under the Constitution, including his Sixth Amendment right to adequate representation by counsel.

LANGTRY, J., joins in this concurring opinion.