Argued June 25, affirmed August 26, petition for rehearing
denied November 11, petition for review denied
December 21, 1971

## STATE OF OREGON, *Respondent, v.*
## LARRY VERNARD RAIFORD, *Appellant.*

488 P2d 295
490 P2d 206

*Terrance L. McCauley,* Portland, argued the cause for appellant. With him on the brief was Paul J. Rask, Portland.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

## THORNTON, J.

Defendant was convicted of burglary in a dwelling house. On appeal, defendant contends that the trial court erred by not suppressing his confession.

Defendant, a 17-year old, was arrested at 3 a.m., November 26, 1969, on a charge of violating a curfew for minors. While in custody for that offense, defendant waived his *Miranda*[1] rights and confessed in writing to a burglary which had occurred several days before.

---

[1] Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

Defendant was indicted for the burglary on February 6, 1970. Prior to trial, on December 3, 1970, the court held a hearing on a motion to suppress defendant's handwritten confession.

Defendant admitted signing the waiver and writing the confession, but he testified that he did so because he had been hit in the mouth at the time of his November 26 arrest and had been told later, at the station house, that he would "get the same thing I had gotten outside if I didn't cooperate."

Defendant did not produce any witnesses to support his claim of physical abuse, although he stated that a "group worker" at the Juvenile Detention Home had seen his injured mouth. Defendant did not produce a blood-stained shirt he claimed to have worn at the time of the alleged beating.

Witnesses for the state testified that the confession and waiver were both voluntarily made and that no threats or violence had been used to induce defendant to make them.

The court admitted the confession and it was used against defendant at his trial.

■ Defendant argues that his confession should have been suppressed for two reasons. First, the defendant claims that he was questioned in an inherently coercive atmosphere. Defendant asks us to note his age, the fact that the questioning occurred at approximately 4 a.m., the length of the questioning and his isolation. However, the trial court heard testimony concerning the factual circumstances surrounding defendant's interrogation and the court concluded that the atmosphere had not been such as to make defendant's confession and waiver involuntary and coerced.

As stated in *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968):

> "What actually transpired is a question of fact for the trial court or jury. If the evidence sustains such historical factual findings they will not be disturbed by this court. If findings are not made on all such facts, and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the ultimate conclusion, e.g., voluntariness or lack thereof, made by the trial court or jury * * *."

*See also, State v. Regan,* 5 Or App 491, 484 P2d 861, Sup Ct *review denied* (1971).

Defendant's second contention is that the police are required to inform a minor that his confession can be used to secure a criminal conviction and that the record does not reveal any evidence that defendant was so informed. Defendant relies upon language in *State v. Gullings,* 244 Or 173, 416 P2d 311 (1966), to support his argument. In that case the Oregon Supreme Court stated that a minor can make an admissible confession

> "* * * so long as it is made clear to the juvenile that criminal responsibility can result * * *." 244 Or at 178-79.

■ Defendant would have us interpret the term "criminal responsibility" narrowly and reverse because the record does not show that defendant was told that his confession could be used in a criminal proceeding in adult court, which could result in a criminal sentence to the county jail or the state penitentiary. We do not so interpret this statement. Instead, we read the dicta in *Gullings* as mandating the police to inform a juvenile that some form of punishment can result

from the use of any confession the juvenile might make. It is the knowledge that punishment can be a consequence of his actions, and not the form this punishment might take, that is the important factor to be considered by the juvenile when deciding whether to waive his Fifth Amendment rights.

The advice form signed by defendant specifically states that

> "* * * Anything you say and any statement you write can be USED AGAINST YOU IN COURT to prove that you have committed a *crime* * * *." (Emphasis supplied.)

The record reveals that an officer told defendant that anything he said could be used against him in court.

Witnesses for the state testified that defendant told the police he had heard the statement of rights before and knew what the officer was talking about when he read them to him, and defendant admitted, on examination by the court during the hearing on the motion to suppress, that he knew the "routine."

■ The evidence sustained the finding that defendant was made sufficiently aware of the consequences of his actions for his admissions to constitute a voluntary confession.

Affirmed.

### ON PETITION FOR REHEARING

On appellant's petition for rehearing filed September 15, 1971.

Paul J. Rask, Terrance L. McCauley and Raul Soto-Sellig, Portland, for the petition.

Lee Johnson, Attorney General, John W. Osburn, Solicitor General, and Thomas H. Denney, Assistant Attorney General, Salem, contra.

Before SCHWAB, Chief Judge, and FOLEY and
THORNTON, Judges.

THORNTON, J.

This case was argued at trial and on appeal
on the issue of the voluntariness of the confession. In
attempting to establish that the confession was in-
voluntary, two of the factors relied on by defendant
were that his parents had not been notified and that
he was not taken promptly to the juvenile detention
home. The contention that these acts were contrary
to certain provisions of the Oregon Juvenile Code[1]

---

[1] ORS 419.573 (2) provides:

"As soon as practicable after the child is taken into cus-
tody, the peace officer or other person taking him into custody
shall notify the child's parent, guardian or other person re-
sponsible for the child."

ORS 419.575 (2)(a) provides:

"(2) No child shall at any time be detained in a police
station, jail, prison or other place where adults are detained,
except as follows:

"(a) A child may be detained in a police station for such
period, not exceeding three hours, as may be necessary to
obtain the child's name, age, residence and other identifying
information."

ORS 419.577 provides:

"(1) If a child taken into temporary custody is not re-
leased as provided in subsection (3) of ORS 419.573, the peace
officer or other person taking the child into custody shall
without unnecessary delay take the child:

"(a) Before the court; or

"(b) To a place of detention or shelter care designated by
the court, or to a jail if no detention facility is available and
the child requires secure custody, and shall as soon as possible
thereafter notify the court that the child has been taken into
custody; or

"(c) Deliver the child to the county in which he resides as
provided in ORS 419.579.

"(2) Except where the child is taken into custody pursuant
to an order of the court, the peace officer or other person

was not mentioned. At no time prior to the petition for rehearing did defendant contend that the failure to observe the statutory provisions referred to invalidated the confession as a matter of law.

The record indicates that defendant was arrested at 3 a.m. as a curfew violator and subsequently questioned at the station house concerning his implication in a series of burglaries. At 4:30 a.m. he signed a waiver of his rights; at 5:30 a.m. he signed a confession. Shortly thereafter he was taken to the juvenile home. Neither his parents nor an attorney was present during the questioning. The record is silent as to whether or not the officers endeavored to notify defendant's parents as required by ORS 419.573 (2).

In both *State v. Phillips,* 245 Or 466, 422 P2d 670 (1967), and *State v. Gullings,* 244 Or 173, 416 P2d 311 (1966), the minor's parents were not present at the time he waived his rights. The waivers were upheld notwithstanding. *Phillips* held that a violation of ORS 419.575 (2)(a) was not in itself enough to require the suppression of the confession obtained.

██ The law of the great majority of states, including Oregon, is that the violation of statutes concerning

taking the child into custody shall promptly file with the court or a counselor a brief written report stating:

"(a) The child's name, age and address; and

"(b) The reason why the child was not released.

"(3) Pending further disposition of the case, the court may release the child to the custody of his parent or other responsible person or may order that the child remain in detention or shelter care subject to further order. No child shall be held in detention more than 24 hours, excluding Saturdays, Sundays and judicial holidays, except on order of the court nor for more than 48 hours, excluding Saturdays, Sundays and judicial holidays, except on order of the court made pursuant to a hearing on the matter of detention."

the handling of juveniles and the presence or absence of their parents are not determinative, but are factors to be considered in determining whether a juvenile's confession is voluntary. See, *In re Williams,* 49 Misc 2d 154, 267 NYS2d 91 (Fam Ct 1966). Petitioner had a full hearing on the issue of voluntariness on trial and on appeal. No reason is given for the petitioner's failure to raise the issue of statutory violations at either of the prior hearings.

The petition for rehearing is denied.