THERIAULT, Plaintiff in error, v. STATE, Defendant in error.

*No. State 143. Argued October 30, 1974.—Decided December 20, 1974.*
(Also reported in 223 N. W. 2d 850.)

34

For the plaintiff in error there were briefs by *George K. Whyte, Jr.*, and *Stephen E. Richman,* both of Milwaukee, and oral argument by *Mr. Whyte.*

For the defendant in error there was a brief by *Robert W. Warren,* attorney general, and *Christine M. Wiseman,* assistant attorney general, and oral argument by *William L. Gansner,* assistant attorney general.

WILKIE, C. J. The plaintiff in error, Jeffrey Lee Theriault (hereinafter defendant), after being charged and waived into adult court, pleaded guilty in November, 1972, to attempted first-degree murder in violation of secs. 940.01 and 939.32, Stats., and armed burglary in violation of sec. 943.10 (1) (a) and (2) (a). He was sentenced to a prison term of not more than fifteen years on the attempted murder charge and a term of not more than five years for the armed burglary offense, the sentences to run concurrently. This court issued a writ of error to review the judgment of conviction for attempted murder.

The major issue raised on this review is whether a voluntary pre-judicial custodial confession, given to the police by a seventeen-and-one-half-year-old minor, without the presence of a parent or legal custodian, is barred

from receipt in evidence by the trial court on the grounds either that (1) it is per se a denial of his right against self-incrimination, or (2) the confession was given following police failure to comply with the requirements of sec. 48.29 (1), Stats., requiring notification of parents. We conclude that it is barred on neither ground.

The attempted murder took place on the evening of May 22, 1972, at Custer High School in the city of Milwaukee. Defendant broke into the school by smashing a window with a tire iron, and once inside, pried open a teacher's locked desk and a food freezer. He then noticed the victim, Francis Bryant, a school janitor, standing nearby. Bryant assured defendant he would not call the police and the two conversed for a time. However, after a milk deliveryman came and departed, defendant, apparently afraid the janitor had informed the deliveryman of the situation, struck Bryant on the head with the tire iron while they were walking together. After beating the back of the janitor's head six to eight times, defendant left the school with his victim lying in a pool of blood, 85 percent blind in both eyes, totally deaf in one ear and partially deaf in the other.

The defendant was not arrested until a week later, on May 29, 1972. This was about 5:30 p. m. The police officers' version of what followed is that defendant was given a *Miranda* warning while in a squad car en route to the detective bureau. Defendant told the officers that he understood his constitutional rights. After arriving at the detective bureau, the defendant was again given the *Miranda* warning and he said that he understood his rights "completely and fully;" and, in fact, he then even recited his constitutional rights back to the officers. The officers testified that, after answering preliminary questions, the defendant said he had "something that he wanted to get off his chest." The defendant then proceeded to give a complete confession concerning the

attack on Bryant. This confession lasted from approximately 6:20 p. m. to 7:45 p. m.

The defendant's version of the facts is substantially similar to that recited by the detectives. The defendant did claim that he asked to see an attorney at the start of the questioning, but that the detectives made no response. He also said that the detectives promised they would help him if he confessed, by informing the court of his cooperation. The defendant admitted that no other promises were made and that he was treated properly. Although the defendant refused to read or sign the transcript of his oral statement, he admitted that the confession was given voluntarily because he wanted to confess concerning his involvement in the incident.

At the time of his arrest, defendant had been absent without leave from the Army and while his semi-invalid grandmother was his legal guardian, he had not slept at her house for at least two weeks prior to the arrest. Defendant's parents were divorced, married again, and lived with their spouses in different communities.

After the confession was completed at 7:45 p. m., the police detectives attempted to reach defendant's grandmother and parents by telephone. The mother was called at her home in Watertown, but a small child answered the phone and said the mother was gone. No message was left because the officer felt the child was too small to be trusted with the message. The officer tried to find a phone number for the father who defendant said lived in Caledonia, but no number could be found. Finally, at 9 p. m. the grandmother was called, against the wishes of the defendant who at first refused to talk to her.

Subsequently that evening, the police drove defendant to his grandmother's house to recover the clothes worn by defendant during the attack. At that time defendant's father, who had been contacted by the grandmother, called the house and told defendant to remain silent until talk-

ing to a lawyer. Defendant was then taken to the police station and confined at the city jail.

On June 15, 1972, defendant was found not mentally infirm or deficient, and on June 22, 1972, defendant was waived into adult court. On November 9, 1972, following a *Goodchild* hearing, the trial court ruled that "based upon the totality of the circumstances," the detention of defendant following his arrest was not illegal and that his confession was completely voluntary. On November 30, 1972, defendant entered his guilty plea and on December 6, 1972, he was sentenced.

There is no question here, and defendant so concedes, that under the totality of the circumstances the confession was the voluntary product of the defendant's free will and was in no way the result of coercion.

The narrow issue presented by the defendant here is whether we should adopt a per se rule against the use of a confession, which admittedly is voluntary, on the sole ground that the confession was given by a seventeen-and-one-half-year-old minor without the presence of a parent or legal guardian.

A. *In re Gault.*

The starting point for an analysis of the constitutional rights of juveniles is *In re Gault* [1] where, in 1967, the United States Supreme Court held that in juvenile delinquency proceedings minors were entitled to the benefit of certain constitutional rights previously only accorded to adults. Among these rights is the privilege against self-incrimination.[2] Although the court expressly confined its ruling to questions concerning the rights of minors in juvenile delinquency proceedings,[3] the following language in the opinion is instructive here:

---

[1] (1967), 387 U. S. 1, 87 Sup. Ct. 1428, 18 L. Ed. 2d 527.

[2] *Id.* at pages 42–57.

[3] ". . . we are not here concerned with the procedures or constitutional rights applicable to the pre-judicial stages of the juvenile process, nor do we direct our attention to the post-ad-

"We conclude that the constitutional privilege against self-incrimination is applicable in the case of juveniles as it is with respect to adults. We appreciate that special problems may arise with respect to waiver of the privilege by or on behalf of children, and that there may well be some differences in technique—but not in principle—depending upon the age of the child and the presence and competence of parents. The participation of counsel will, of course, assist the police, Juvenile Courts and appellate tribunals in administering the privilege. If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." [4]

Thus the court does not hold the presence of counsel or parents the *sine qua non* to a valid confession nor that waiver of the right to silence is impossible. Rather, the court recognizes that confessions of juveniles involve special problems that may require authorities to use different techniques from those used in connection with adult confessions and that require courts to use the "greatest care" in assessing the validity of the confession.

B. *Wisconsin Cases.*

This court has, on at least two previous occasions, judged the voluntariness of a juvenile's confession based on the "totality of the circumstances." [5] In *Bradley v. State* [6] an eighteen-year-old mother confessed that she strangled her two infant children. The court said:

judicative or dispositional process. . . . We consider only the problems presented to us by this case. These relate to the proceedings by which a determination is made as to whether a juvenile is a 'delinquent' as a result of alleged misconduct on his part, with the consequence that he may be committed to a state institution." *Id.* at page 13. *See also, id.* at page 44.

[4] *Id.* at page 55.

[5] The test which is applicable to adult confessions, *State v. Wallace* (1973), 59 Wis. 2d 66, 81, 207 N. W. 2d 855.

[6] (1967), 36 Wis. 2d 34ὺ, 153 N. W. 2d 38, 155 N. W. 2d 564.

". . . We conclude, after a review of the constitutionally relevant facts that the confessions were a product of the free and unconstrained will of the defendant, that they were voluntarily given, and were properly admitted into evidence." [7]

It is true that in this case the defendant talked to her husband and minister before confessing. However, these conversations ended more than two hours before the confession took place, neither were present during the confession, and there is no indication that either was informed of defendant's rights. Moreover, the court only referred to her opportunity to consult with these two individuals as one of the factors dictating a finding of voluntariness; others included a *Miranda* warning, good treatment and lack of promises by police, and her "sophisticated knowledge of the ways of the police." Finally, the court rejected defendant's argument that a guardian *ad litem* should have been appointed for her:

". . . Counsel for the defendant argues principally that a guardian *ad litem* is required by the principles of *Gault* because of the possibilities that a confession of a juvenile may be the product of coercion.
"We have concluded that Sherry's confession was deliberate and uncoerced. Moreover, a guardian *ad litem* could offer no more protection to a defendant than could the timely appointment of other counsel. Although Sherry was informed of her right to counsel, she did not ask for one." [8]

In other words, minors may have the capacity to waive constitutional rights and to confess.

In *Mikulovsky v. State* [9] a seventeen-year-old voluntarily entered a police station, confessed to killing his two parents, and after then being arrested and given a *Miranda* warning, gave a more detailed confession. He was

[7] *Id.* at page 358.
[8] *Id.* at page 359a.
[9] (1972), 54 Wis. 2d 699, 196 N. W. 2d 748.

subsequently convicted of two counts of first-degree murder and sentenced to life imprisonment. The court said the initial statement need not have been preceded by a *Miranda* warning because defendant was not, at that time, in custody. However, as to both the confessions, the court approved the lower court's finding:

> ". . . that from the totality of the circumstances, defendant's oral and written statements were voluntarily given and were not the result of any psychological coercion or pressure." [10]

No attorney or guardian was present during or before the confession; yet, based on the totality of the circumstances, the court held the confession admissible into evidence.

Thus, the current state of the law in Wisconsin is that the validity of juvenile confessions is determined based upon the totality of the circumstances in the case, and that presence of parents, guardian, or attorney is not an absolute requirement for the minor to validly waive his right to remain silent.

C. *Cases from Other Jurisdictions.*

The vast majority of state [11] and federal [12] courts that have decided the issue have rejected the per se approach

[10] *Id.* at page 716. *See also: id.* at page 722.

[11] Arizona: *State v. Hardy* (1971), 107 Ariz. 583, 491 Pac. 2d 17, overruling *State v. Maloney* (1967), 102 Ariz. 495, 433 Pac. 2d 625, which had created a per se rule against admissibility without prior notification of parents; California: *People v. Lara* (1967), 67 Cal. 2d 365, 62 Cal. Rptr. 586, 432 Pac. 2d 202, certiorari denied, 392 U. S. 945, 88 Sup. Ct. 2303, 20 L. Ed. 2d 1407; Connecticut: *State v. Oliver* (1970), 160 Conn. 85, 273 Atl. 2d 867, certiorari denied, 402 U. S. 946, 91 Sup. Ct. 1637, 29 L. Ed. 2d 115; Illinois: *People v. Pierre* (1969), 114 Ill. App. 2d 283, 252 N. E. 2d 706, certiorari denied, 400 U. S. 854, 91 Sup. Ct. 71, 27 L. Ed. 2d 92; Louisiana: *State v. Melanson* (La. App. 1972), 259 So. 2d 609; Massachusetts: *Commonwealth v. Cain* (Mass. 1972), 279 N. E. 2d 706; Minnesota: *State v. Hogan* (1973), 297 Minn. 430, 212 N. W. 2d 634; North Carolina: *State v. Dawson*

to juvenile confessions and adopted a totality of the circumstances test, where the presence of parents, guardian, or attorney is only one factor to be considered. As the Minnesota Supreme Court said in *State v. Hogan,*[13] in upholding the first degree murder conviction of a fifteen-year-old,

"Defendant here makes the . . . argument for a per se exclusionary rule whenever Miranda rights are waived and a statement is given by a juvenile in the absence of a parent or guardian. Although we recognize that the presence of parents and their guidance during interrogation of a juvenile is desirable, we reject the absolute rule that every minor is incapable and incompetent as a matter of law to waive his constitutional rights. In determining whether a juvenile has voluntarily and intelligently waived his constitutional rights, parental presence is only one factor to consider and is not an absolute prerequisite. We hold that the determination whether a waiver of rights is voluntarily and intelligently made by a juvenile is a fact question dependent upon the totality of the circumstances. The child's age, maturity, in-

(1971), 278 N. C. 351, 180 S. E. 2d 140; New York: *People v. Stephen J. B.* (1969), 23 N. Y. 2d 611, 246 N. E. 2d 344; New Jersey: *State v. R. W.* (1971), 115 N. J. Super. 286, 279 Atl. 2d 709; Ohio: *State v. Carder* (1965), 3 Ohio App. 2d 381, 210 N. E. 2d 714; Oregon: *State v. Raiford* (1971), 7 Ore. App. 202, 488 Pac. 2d 295, 490 Pac. 2d 206; Pennsylvania: *Commonwealth v. Moses* (1971), 446 Pa. 350, 287 Atl. 2d 131; Tennessee: *Vaughn v. State* (1970), 3 Tenn. Crim. App. 54, 456 S. W. 2d 879; Texas: *In re Garcia* (Tex. Civ. App. 1969), 443 S. W. 2d 594; Wyoming: *Mullin v. State* (Wyo. 1973), 505 Pac. 2d 305, certiorari denied, 414 U. S. 940, 94 Sup. Ct. 245, 38 L. Ed. 2d 166.

12 *United States v. Miller* (4th Cir. 1972), 453 Fed. 2d 634, certiorari denied, 406 U. S. 923, 92 Sup. Ct. 1790, 32 L. Ed. 2d 123; *United States v. Hilliker* (9th Cir. 1970), 436 Fed. 2d 101, certiorari denied, 401 U. S. 958, 91 Sup. Ct. 987, 28 L. Ed. 2d 242; *Rivers v. United States* (5th Cir. 1968), 400 Fed. 2d 935; *West v. United States* (5th Cir. 1968), 399 Fed. 2d 467, certiorari denied, 393 U. S. 1102, 89 Sup. Ct. 903, 21 L. Ed. 2d 795. *See United States v. Fowler* (7th Cir. 1973), 476 Fed. 2d 1091 (issue of per se rule raised but not decided).

13 (1973), 297 Minn. 430, 440, 212 N. W. 2d 664.

telligence, education, experience, and ability to comprehend are all factors to be considered in addition to the presence and competence of his parents during waiver."

In *People v. Lara* [14] the California Supreme Court said:

". . . a minor, even of subnormal mentality, does not lack the capacity as a matter of law to make a voluntary confession without the presence or consent of counsel or other responsible adult, or to make a knowing and intelligent waiver of his right to counsel at trial; in either event, the issue is one of fact, to be decided on the 'totality of the circumstances' of each case."

Finally, in *People v. Stephen J. B.*[15] the New York Court of Appeals said:

"We cannot accept the suggestion that every minor is as a matter of law incompetent to waive his constitutional rights to remain silent and to an attorney unless the waiver is consented to by a parent or guardian who has himself been advised of the minor's rights. Of course, such adult consent is to be desired. However, whether a minor knowingly and intelligently waived these rights is a question of fact and a mere failure of the police to seek the additional consent of an adult will not outweigh, in any given instance, an evidentially supported finding that such a waiver was actually made."

Additional quotation of authorities is unnecessary.

In the face of the overwhelming weight of authority against him, defendant principally [16] relies on decisions

[14] (1967), 67 Cal. 2d 365, 389, 62 Cal. Rptr. 586, 432 Pac. 2d 202, certiorari denied, 392 U. S. 945, 88 Sup. Ct. 2303, 20 L. Ed. 2d 1407.

[15] (1969), 23 N. Y. 2d 611, 616, 617, 246 N. E. 2d 344.

[16] In addition to the Indiana and Missouri cases cited in footnotes 17 and 18, defendant also relies on *Matter of Aaron D.* (1968), 30 App. Div. 2d 183, 290 N. Y. Supp. 2d 935, from an intermediate New York Appeals Court, and *Daniels v. State* (1970), 226 Ga. 269, 174 S. E. 2d 422.

*Matter of Aaron D.* held that a fifteen-year-old minor could not even be questioned until the minor and his parents were notified of his right to silence. However, this case appears con-

from Indiana and Missouri that have adopted a per se rule concerning the validity of juvenile confessions in the absence of prior consultation with parents. In *Lewis v. State* [17] the Indiana Supreme Court said:

> "We hold therefore that juvenile's statement or confession cannot be used against him at a subsequent trial or hearing unless both he and his parents or guardian were informed of his rights to an attorney, and to remain silent. Furthermore, the child must be given an opportunity to consult with his parents, guardian or an attorney representing the juvenile as to whether or not he wishes to waive those rights. After such consultation the child may waive his rights if he so chooses provided of course that there are no elements of coercion, force or inducement present."

Relying on *Lewis*, the Missouri Court of Appeals in *In re K. W. B.*[18] adopted the identical rule.

We think that the reasoning of the majority of the appellate courts in the cases cited above is persuasive, as against the rulings of the Indiana and Missouri courts. The receipt in evidence of a confession of a juvenile must be considered under the prevailing test of the totality of the circumstances with the absence of a parent or guardian being one factor to be considered in determining whether the confession was indeed voluntarily given.

---

fined to minors under sixteen and is based on statutory rights rather than the constitution. *People v. Stephen J. B.* (1969), 23 N. Y. 2d 611, 246 N. E. 2d 344, rejected a per se rule for minors not subject to the statute.

In *Daniels*, the Georgia Supreme Court held a confession invalid for a number of reasons, including the absence of parents. However, the minor was not given a *Miranda* warning before his first incriminating statements, and there was evidence of threats and verbal abuse. The court did not adopt a per se rule concerning the need for the presence of parents.

[17] (1972), 259 Ind. 431, 439, 288 N. E. 2d 138, 142.

[18] (Mo. Ct. App. 1973), 500 S. W. 2d 275, 283.

Defendant next contends that the taking of his confession was illegal because the police failed to comply with sec. 48.29 (1) and (2), Stats., which provides as follows:

"48.29 **Release or detention.** (1) When a child is taken into custody as provided in s. 48.28, the parent, guardian or legal custodian of the child shall be notified as soon as possible. The person taking the child into custody shall, unless it is impracticable, undesirable, or has been otherwise ordered by the court, return the child to his parent, guardian or legal custodian on the promise of such person to bring the child to the court, if necessary, at a stated time or at such time as the court may direct. If the person taking the child into custody believes it desirable, he may request such parent, guardian or legal custodian to sign a written promise to bring the child to court as provided above.

"(2) If the child is not released as provided in sub. (1), he may be detained in a place of detention specified in s. 48.30 but only on written order of the court specifying the reason for detention. The parent, guardian or legal custodian of the child shall be notified of the place of detention as soon as possible. If because of the unreasonableness of the hour or the fact that it is a Sunday or holiday it is impractical to obtain a written order from the court, the child may be detained without a written order of the court for a period of not to exceed 24 hours but a written record of such detention shall be kept and a report in writing filed with the court. The judge of the juvenile court may authorize any person, designated by s. 48.06 or 48.07 to provide services for the court, to order detention of the child."

In addition, the following provisions of sec. 48.01, Stats., also bear on this issue:

"(2) INTENT. It is declared to be the intent of this chapter to promote the best interests of the children of this state through:

". . .

"(c) Protection of children from unnecessary separation, either temporary or permanent, from their parents;

". . .

"(3) CONSTRUCTION. This chapter shall be liberally construed to effect the objectives in sub. (2). The best interests of the child shall always be of paramount consideration, but the court shall also consider the interest of the parents or guardian of the child and the interest of the public."

Defendant's primary contention is that the police failed to notify defendant's parents or guardian here as soon as possible, and that such failure destroys the legality of the confession. Since defendant's legal guardian at the time was his grandmother, she is the person who should have been notified, and she was not notified "as soon as possible," interpreting the phrase literally. The questioning detectives obtained the grandmother's name and telephone number shortly after the arrest, during preliminary questions at the detective bureau. Yet she was not called until approximately 9 p. m., after defendant had confessed. However, it must be noted that the detectives testified that defendant vigorously protested when they indicated they wanted to call the grandmother, and when the call was ultimately made, defendant at first refused to speak to her.

Relying on a number of cases from other jurisdictions, defendant argues that no questioning or investigation may take place until the police notify the parents or guardian. We disagree. The cases cited by defendant are inapposite because they involved statutes not merely requiring parental notification, but instead, affirmatively requiring police to immediately bring the minor in custody before certain juvenile or judicial authorities.[19]

[19] *United States v. Binet* (2d Cir. 1971), 442 Fed. 2d 296, 299 (statute required taking juvenile " '*forthwith*' " before magistrate, and provided that detention could not " 'be for a longer period than is *necessary* to produce the juvenile before a committing magistrate' "); *State v. Shaw* (1963), 93 Ariz. 40, 378 Pac. 2d 487 (statute required police to take juvenile " 'forthwith' " before probation officer and then to follow officer's recommendation for disposition of child); *Roberts v. State* (Fla. 1973), 285 So. 2d 385

Sec. 48.29, Stats., on the other hand, does not limit the power of police to question or investigate or require the child to be immediately brought before his parents. Rather, the statute concerns procedures for the release or detention of the child. It is designed to serve the goal expressed in sec. 48.01 (2) (c), of protecting the child from unnecessary separation from his parents. As the 1955 Revision Committee Note to sec. 48.29 (1) points out:

"Sub. (1) deals with the release of children taken into custody. It requires a verbal promise by the child's parent, guardian, or legal custodian to bring him to court, not a written one, as the present statutes do. The written promise may be required if the officer feels it is necessary but, since the written promise frequently is not required at present, the statute was amended to conform to practice." [20]

Thus, the purpose behind notification of parents is to allow the child to be released to the custody of his parents or in our case, his legal guardian, until he must appear in court, unless it is "impracticable, undesirable, or has been otherwise ordered by the court." Thus this provision is designed to supplant the need for bail as in adult proceedings, but it pertains to the same stage of the case. If such release is in fact impracticable or undesirable, then under sec. 48.29 (2) the court may order the child confined to a place of detention. There is no prohibition even here, on investigation or questioning; indeed, parental presence is not even required. The parents must only be notified as soon as possible of the place of detention ordered by the court. Additionally it must be noted

(statute required child to be taken before county court " 'without delay for the purpose of investigation or any other purpose' "); *People v. Wolff* (1970), 23 Mich. App. 550, 179 N. W. 2d 206 (statute required taking child before juvenile court " 'immediately' ").

[20] 6 W. S. A., p. 399.

that the very decision whether to release or detain may be influenced by the child's statements concerning the alleged offense and any other that he may have committed.

The courts of numerous states have held that failure to notify parents or guardian in accord with statute does not per se render a confession inadmissible unless the statutes expressly so provide. The failure to promptly notify and the reasons therefor may be a factor, however, in determining whether the confession was coerced or voluntary. If the police fail to call the parents for the purpose of depriving the juvenile of the opportunity to receive advice and counsel, that would be strong evidence that coercive tactics were used to elicit the incriminating statements. On the other hand where, as in the instant case, defendant was fully advised of his rights, and where he failed to avail himself of the opportunity given him to make a phone call and specifically requested the police not to call his semi-invalid grandmother because he was afraid it might adversely affect her health, an inference of coercion should not be drawn. As the Illinois Supreme Court said in *People v. Steptore:* [21]

> "Defendant . . . argues that the record shows a failure to comply with section 3–2 of the Juvenile Court Act . . . which requires that notice be given to a parent or person legally responsible for the minor's care and that he be surrendered to a juvenile officer without unnecessary delay. The People admit that the officers who arrested and questioned defendant did not comply with section 3–2. The record shows beyond question that defendant, prior to making the statement, was admonished in detail with respect to his right to remain silent and to have counsel immediately available, and that defendant understood the admonition. Under the circumstances failure to comply with section 3–2 did not render the statement inadmissible."

[21] (1972), 51 Ill. 2d 208, 214, 215, 281 N. E. 2d 642.

The New Jersey Supreme Court said in *State v. Smith:* [22]

". . . we do not conceive that R. R. 6:8–3 (b) and (c), in speaking of an officer who has taken a juvenile into custody without process making 'immediate arrangements' to have him removed to his home or placed in an approved detention facility, requires that such must necessarily be done before the police are afforded a reasonable opportunity to question, where that course is desirable or important. Especially is this true in a situation like the instant one where the crime was most serious and the police information of somewhat doubtful character. Under such circumstances, confinement, even in a juvenile detention facility to await juvenile court hearing, is not justified in the absence of something more trustworthy than hearsay. Suspects might well be able to satisfy the authorities of their innocence and be entitled to be released completely as a result of the interrogation. And, of course, . . . any questioning must be confined to such limits of time and be conducted in such a manner that fair treatment is given, lest any admissions made at such a session be held inadmissible in evidence at a subsequent trial.

". . . it appears . . . to be suggested that at least the spirit of our juvenile rules precludes police questioning of juvenile suspects. . . . talking to people and asking them questions, whether they be suspects or not, is a standard and most essential element of crime solution and law enforcement. While police brawn and bluster to extort confessions cannot be a substitute for brains and leg work and will not be countenanced, the public interest requires that interrogation, and that at a police station, not completely be forbidden, so long as it is conducted fairly, reasonably, within proper limits and with full regard to the rights of those being questioned."

Finally, as the Oregon Court of Appeals succinctly stated in *State v. Raiford:* [23]

"The law of the great majority of states, including Oregon, is that the violation of statutes concerning the

[22] (1960), 32 N. J. 501, 533, 534, 161 Atl. 2d 520, 537.
[23] (1971), 7 Ore. App. 202, 209, 210, 490 Pac. 2d 206.

handling of juveniles and the presence or absence of their parents are not determinative, but are factors to be considered in determining whether a juvenile's confession is voluntary."

We conclude that any failure of the police to comply with sec. 48.29, Stats., did not render the taking of defendant's confession illegal.

The third issue raised on this review is: May a confession be used against a minor in adult criminal proceedings where it was obtained prior to waiver of the minor into adult court?

Here, defendant relies on the 1961 District of Columbia Circuit Court of Appeals opinion in *Harling v. United States* [24] where the court held that a confession given while a minor was still subject to juvenile court jurisdiction was not admissible in adult proceedings. The court based its decision on principles of fundamental fairness:

". . . It would offend these principles to allow admissions made by the child in the noncriminal and non-punitive setting of juvenile proceedings to be used later for the purpose of securing his criminal conviction and punishment. Such a practice would be tantamount to a breach of faith with the child, since he cannot be charged with knowledge of either his privilege against self-incrimination or the Juvenile Court's power to waive its jurisdiction and subject him to criminal penalties. Moreover, if admissions obtained in juvenile proceedings *before* waiver of jurisdiction may be introduced in an adult proceeding *after* waiver, the juvenile proceedings are made to serve as an adjunct to and part of the adult criminal process. This would destroy the Juvenile Court's *parens patriae* relation to the child and would violate the

[24] (D. C. Cir. 1961), 295 Fed. 2d 161. This case was cited, apparently with approval, in a footnote in *Kent v. United States* (1966), 383 U. S. 541, 544, 86 Sup. Ct. 1045, 16 L. Ed. 2d 84. It must be noted, however, that *Kent*, like *Harling*, preceded the supreme court's decision in *In re Gault* (1967), 387 U. S. 1, 87 Sup. Ct. 1428, 18 L. Ed. 2d 527.

non-criminal philosophy which underlies the Juvenile Court Act." [25]

However, subsequent to this decision, the supreme court decided *Gault*, holding that since juvenile proceedings could result in severe sanctions, minors involved in such proceedings were entitled to many of the same rights accorded defendants in adult criminal proceedings, including the privilege against self-incrimination. Thus, since the nature of juvenile proceedings has changed, *Harling* should not be adhered to. As the state points out, the absolute rule established by *Harling* has been criticized and abandoned by a number of jurisdictions.[26] Since juveniles now receive *Miranda* warnings just like adults there is no need for an absolute exclusionary rule. On the other hand, there may be situations where the reasonable expectations of a minor that his confession will be used against him only in juvenile proceedings should be protected. In the very recent case of *State v. Loyd* [27] the Minnesota Supreme Court reconciled these two considerations:

> ". . . A confession by a juvenile is admissible if he has been apprised of his constitutional rights and voluntarily and intelligently waives those rights in making a statement. However, we recognize that the nature of the juvenile system may work to encourage a confession by a juvenile which might otherwise be withheld. While all of the facts and circumstances should be examined in determining whether a juvenile has intelligently waived

[25] 295 Fed. 2d at pages 163, 164.

[26] *State v. Loyd* (1973), 297 Minn. 442, 212 N. W. 2d 671; *State v. Sinderson* (Mo. 1970), 455 S. W. 2d 486, 493; *State v. Gullings* (1966), 244 Ore. 173, 416 Pac. 2d 311; *Mitchell v. State* (1971), 3 Tenn. Crim. App. 494, 464 S. W. 2d 307; *Whitaker v. State* (Tex. Crim. App. 1971), 467 S. W. 2d 264, 267; *State v. Prater* (1970), 77 Wash. 2d 526, 463 Pac. 2d 640.

[27] (1973), 297 Minn. 442, 450, 212 N. W. 2d 671, 677. The court indicated it was relying principally on *State v. Gullings, supra*, footnote 26.

those rights, it is important that the juvenile is questioned in an adversary setting and not in the confidential atmosphere of the juvenile court process; otherwise he may not realize that criminal responsibility might result. Awareness of potential criminal responsibility may often be imputed to a juvenile when the police are conducting the interrogation. Of course, the safest method the interrogating authority can pursue is to specifically advise a juvenile that criminal prosecution as an adult could result whenever such prosecution is possible."

There is no question but that defendant's confession in the instant case is admissible in adult criminal proceedings. He was placed in custody by regular policemen, questioned at the detective bureau, and warned that his statements could be used against him "in a court of law." No evidence indicates defendant confessed expecting that his statements could only be used in juvenile proceedings.

We conclude, therefore, that none of the defendant's contentions, pointing to the inadmissibility of his admittedly voluntary confession to the detectives, has any merit and we, therefore, affirm the judgment of conviction which was based on a guilty plea made by the defendant after he had confessed.

*By the Court.*—Judgment affirmed.