171 Conn. 683 (1976)
ERIC WASHINGTON
v.
STATE OF CONNECTICUT
Supreme Court of Connecticut.
Argued June 8, 1976.
Decision released September 21, 1976.
HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, JS.
*684 Donald D. Dakers, for the appellant (plaintiff).
William F. Gallagher, special assistant state's attorney, with whom, on the brief, were Arnold Markle, state's attorney, and Michael J. Whalen, Juvenile Court advocate, for the appellee (state).
BOGDANSKI, J.
This is an appeal from the Superior Court's dismissal of the plaintiff's appeal from an order of the Juvenile Court transferring the fourteen-year-old plaintiff to the jurisdiction of the Superior Court pursuant to the provisions of § 17-60a of the General Statutes.[1] The plaintiff has *685 raised two issues: (1) whether the Superior Court erred in concluding that the plaintiff could be transferred to the Superior Court pursuant to § 17-60a upon a finding by the Juvenile Court that there was reasonable cause to believe that the plaintiff was a participant in a felony murder and therefore committed the crime of murder, and (2) whether the Superior Court erred in concluding that certain incriminating statements made by the plaintiff were properly admitted into evidence during the Juvenile Court proceedings.
The hearing in the Juvenile Court tended to establish the following underlying facts: On December 7, 1974, at approximately 11 p.m., Gary Stein was shot by a shotgun while on a public sidewalk in New Haven. He subsequently died as a result of the wounds received. A spent cartridge shell recovered at the scene was shown to have been fired from a shotgun which was in the possession of the plaintiff earlier in the evening of December 7. The shotgun was subsequently found to have been in the possession of Ernest Washington, the plaintiff's brother, at some time following the shooting.
Over the plaintiff's objection, Chief Inspector Vincent DeRosa of the New Haven police department testified to statements made to him by the plaintiff on December 10, 1974. DeRosa's testimony, *686 if believed, showed that on December 7, 1974, the plaintiff, along with five other persons, was riding in an automobile in the city of New Haven looking for a victim to rob; that the plaintiff was aware that one of the persons in the vehicle in which he was a passenger had a shotgun which might be used in the robbery; that the group spotted Gary Stein and decided to rob him; and that one of the occupants of the vehicle other than the plaintiff shot and killed Gary Stein.
At the conclusion of the hearing, the Juvenile Court granted the motion to transfer Eric Washington to the jurisdiction of the Superior Court, finding that there were reasonable grounds to believe that he had "committed the crime of murder."
The plaintiff claims that the Juvenile Court was without power to transfer him to the Superior Court. He argues that the only authority for such a transfer appears in § 17-60a of the General Statutes, and that that statute limits the power of the Juvenile Court to transfer children of the plaintiff's age to situations where the court finds reasonable cause to believe that the child has committed a murder, in the sense that he has actually "pulled the trigger." He contends that when the legislature used the language "commission of a murder" in § 17-60a, it made a conscious choice to eliminate from the transfer provision a situation such as the present one, where the evidence indicates that the child participated in a felony and might be guilty of murder under the felony-murder statute, but where he did not actually "pull the trigger."
The plaintiff's reasoning is strained. The word "commit" means to do or to perpetrate. Webster, *687 Third New International Dictionary. Murder is a crime defined by law. Thus, to commit a murder is to perpetrate the crime which the law has defined as murder. Our felony-murder statute, General Statutes § 53a-54c, states in relevant part: "A person is guilty of murder when acting either alone or with one or more persons, he commits or attempts to commit robbery ... and, in the course of and in furtherance of such crime or flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants." Consequently, one may commit the crime of murder whether or not he personally sets in motion the force which kills. The only restrictive intent which can be attributed to the legislature with respect to § 17-60a is the intent to limit transfers to cases where the court finds there is reasonable cause to believe that the child is guilty of the crime of murder, as distinguished from other crimes. The Superior Court did not err in concluding that the Juvenile Court had the power to transfer the plaintiff based on its finding that there was reasonable cause to believe that he was a participant in a felony and murder.
The plaintiff next claims that the Superior Court erred in upholding the Juvenile Court's admission of Chief Inspector DeRosa's testimony concerning the incriminating statements made to him by the plaintiff on December 10, 1974. The plaintiff contends that evidence of those statements should not have been admitted because they were made while he was unlawfully detained in violation of § 17-65 of the General Statutes, and because he was not warned of his rights in violation of § 1108 (3) of the Practice Book.
*688 Evidence referred to in the parties' briefs reveals the circumstances surrounding the plaintiff's detention. On Sunday, December 8, 1974, the car apparently used in the homicide was found abandoned on Arch Street in New Haven. One of the officers investigating the matter knew that the plaintiff, when on furlough from Long Lane School, stayed at the home of his aunt, Ernestine Snow, who resided on Arch Street, and the officer believed that the plaintiff might have some knowledge of the crime. It was also learned that the plaintiff had recently escaped from Long Lane School. Consequently, at about 5:30 p.m. on December 8, 1974, the plaintiff was arrested by the New Haven police as an escapee. He was advised of his rights under the decision of Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694. After the plaintiff was brought to the police station, the arresting officer went to the home of Ernestine Snow and obtained her signature on a consent form authorizing the questioning of the plaintiff by the police. The plaintiff was again advised of his Miranda rights, and he signed a written waiver of those rights. He was questioned about the homicide of Gary Stein. At about 3:40 a.m. on Monday, December 9, the plaintiff was turned over to the juvenile detention center in New Haven.
At about 1 p.m. on December 9, Donald Russel, a social worker for the state department of children and youth services, and the person assigned by that department to handle the plaintiff's case since 1973, was advised by the police that the plaintiff had been detained. On Tuesday, December 10, Russel went with the police to the juvenile detention facility and accompanied the plaintiff to the investigative unit of the New Haven police department. *689 In Russel's presence, the plaintiff was again advised of his rights and the plaintiff and Russel signed a waiver form. The plaintiff, Russel, and Chief Inspector DeRosa then listened to a tape recording of another participant's description of the events surrounding the homicide of Gary Stein. The plaintiff then made the incriminating statements to DeRosa concerning his involvement in Gary Stein's death. Twice during the interview, DeRosa informed the plaintiff that he was not required to give any information if he did not want to.
We find no merit in the plaintiff's assertion that DeRosa's testimony should have been suppressed because the plaintiff's detention was in violation of § 17-65 of the General Statutes. Section 17-65 provides in relevant part: "Upon the arrest of any child by an officer, such officer shall immediately turn him over to the probation or other officer of the juvenile court, if such course is practicable." The plaintiff was picked up by the police on a Sunday at 5:30 p.m. and was held for approximately ten hours before he was transferred to the juvenile detention center. The Superior Court concluded that under the circumstances of the apprehension, and in view of the fact that the offices of the Juvenile Court were closed, it was not practicable to turn the plaintiff over to the appropriate officials immediately after he was arrested, and that the ten-hour detention was not unreasonable. We have been presented with no facts or circumstances indicating that the conclusion should be disturbed. Moreover, there is no showing that the statements of December 10 were in any way related to the ten-hour detention at the police station on December 8 and 9.
*690 Also lacking merit is the argument that DeRosa's testimony should have been excluded because the plaintiff was not advised of his rights when admitted to the juvenile detention facility at 3:40 a.m. on December 9, in violation of § 1108 (3) of the Practice Book. Practice Book § 1108 (3) provides in pertinent part: "Upon admission [to detention], the child shall be advised of his rights under Secs. 1122 and 1123 (right to keep silent, right to counsel)."
The record reveals that the plaintiff was not informed of his rights when admitted to the detention center, but noncompliance with technical requirements of Practice Book § 1108 (3) is only one element to be considered in determining whether, under the totality of the circumstances, the accused's rights were waived voluntarily and the statements made were the product of free will. Cf. United States v. Miller, 453 F.2d 634 (4th Cir.); State v. Oliver, 160 Conn. 85, 94, 273 A.2d 867, cert. denied, 402 U.S. 946, 91 S. Ct. 1637, 29 L. Ed. 2d 115; State v. Raiford, 7 Ore. App. 202, 488 P.2d 295. The plaintiff was adequately informed of his rights prior to his admission to the juvenile detention center and prior to his making the statements sought to be excluded. No incriminating statements were made while he was in the detention center. Considering the fact that the plaintiff had been advised of his rights at least three times prior to making the statements of December 10, 1974, that he was with his social worker when the statements were made, that he waived his rights in writing twice, and that he understood his rights and indicated to Chief Inspector DeRosa that he "didn't have to talk if he didn't want to," the Superior Court's conclusions that, upon the totality of the *691 circumstances, the statements were voluntary and were not the product of coercion, cannot be disturbed. See United States v. Miller, supra; State v. Oliver, supra.
There is no error.
In this opinion the other judges concurred.
NOTES
[1] "[General Statutes] Sec. 17-60a. TRANSFER TO SUPERIOR COURT OF CHILD REFERRED FOR COMMISSION OF MURDER. The juvenile court shall have the authority to transfer to the jurisdiction of the superior court any child referred to it for the commission of a murder, provided any such murder was committed after such child attained the age of fourteen years. No such transfer shall be valid unless prior thereto the court has caused a complete investigation to be made as provided in section 17-66 and has found, after a hearing, that there is reasonable cause to believe that (1) the child has committed the act for which he is charged and (2) there is no state institution designed for the care and treatment of children to which said court may commit such child which is suitable for his care or treatment or (3) the safety of the community requires that the child continue under restraint for a period extending beyond his majority and (4) the facilities of the superior court provide a more effective setting for disposition of the case and the institutions to which said court may sentence a defendant are more suitable for the care or treatment of such child."