IN THE MATTER OF MATTHEW ELLETT, A MINOR CHILD.
STATE EX REL JUVENILE DEPARTMENT OF
MULTNOMAH COUNTY (No. 34,246),
*Respondent, v.* ELLETT, *Appellant.*

530 P2d 855

*John Toran, Jr.,* Portland, argued the cause and filed the brief for appellant.

*Janet Metcalf,* Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Matha Ellett, the mother of a boy 14 years old at the time of the commission of the alleged crime, has appealed from the finding of the juvenile court that "far beyond a reasonable doubt" the boy was guilty of a murder committed while he was perpetrating an armed robbery. The boy already was a ward of the juvenile court, and for the instant crime was recom-

mitted to MacLaren School for Boys. Parent's assignments of error are (1) that the testimony of a witness should have been excluded upon motion of defense counsel and (2) that the charge should have been dismissed on motion for lack of evidence.

On March 20, 1974 the operator of a dry-cleaning establishment in Portland was found dead behind the counter in his place of business from a .22 caliber gunshot wound. The cash register in the shop was open and no currency was in it.

Evidence which linked the boy to the homicide included the testimony of Monica Drayer, a 16-year-old girl, to the effect that several days after the homicide the boy, with whom she had been keeping company, took her by the establishment and stated that he killed the man there. Through a front window he pointed out to her two bullet holes in the shop ceiling which he said were made when he fired into the ceiling. No investigation of the premises after the homicide had previously disclosed these bullet holes. After they learned about the holes from Miss Drayer, the police recovered a .22 caliber bullet from each.

The evidence included a .22 caliber revolver which was shown by credible evidence to have been in the possession of the boy at the time the homicide occurred. Other evidence, to be discussed later, could be interpreted as meaning that a test bullet fired from this particular .22 pistol matched the bullet which caused the death, and "probably" matched one of those taken from the ceiling.

■ If the evidence outlined above was competent and was believed, it unquestionably was sufficient to sustain the disposition of the case made by the court.

*State v. Arenas,* 253 Or 215, 453 P2d 915 (1969). The appeal to this court is "conducted in the same manner as an appeal in an equity suit * * *." ORS 419.561 (4).

■■ (1). Miss Drayer testified for the state on direct examination to the effect indicated above. The reason she was testifying apparently was that she had been linked to the boy's activities in a subsequent robbery where a toy gun had been used, and when apprehended for her part in it she had decided to cooperate with the police. After her testimony for the state, when defense counsel commenced cross-examination, she refused to further testify. The court threatened her with contempt after three times directing her to answer cross-examination questions. Defense counsel twice moved that the witness' direct examination be excluded from the record. This was denied and after further colloquy, at the request of the state, a five-minute recess was taken. Before the court finally ruled on the motions to exclude, the state's attorney announced that Miss Drayer would submit to cross-examination. A complete cross-examination of her by defense counsel followed, after which there was redirect and recross examination.

The substance of the parent's contention is that the pressure exerted upon Miss Drayer made her entire testimony untrustworthy and it should have been stricken.

Our reading of the record indicates that the court did not act in violation of the discretion it has to direct the conduct of the trial and the admissibility of testimony. *See* ORS 17.215, 17.245. This is not a situation where Miss Drayer refused to and did not submit to cross-examination. There were no obstructive tac-

tics after she commenced answering cross-examination questions. The trial judge was in the best position, having observed the witness and the other people in the court whose presence might create fear or undue pressure upon her, to judge whether the record should stand. *See* ORS 17.030, 17.240, 17.250. He also was in a favorable position to judge the credibility of Miss Drayer's testimony.

 (2). We have already indicated that if the salient parts of the state's evidence were believed by the fact trier it was sufficient. But we must consider whether a part of it was evidence upon which a finding could be based.

The testimony of the criminal investigator who compared the death bullet taken from the deceased with test bullets fired from the gun which was linked to the boy was:

"A. * * * On the first day of April I test fired the revolver and I made comparison of the test fires with the bullet taken from the deceased [Exhibit 10, which was already in evidence from the medical testimony]. This was accomplished between the first day and the sixth day of April.

"This was confirmed with another one of the workers in our laboratory and also by Mr. Vaughn in the State Crime Laboratory.

"Q. Did you make a comparison of the bullet taken from the—that you had taken from the ceiling of the Hy-Tone Cleaners with the one marked State's Exhibit 11? [State's Exhibit 11 actually was the revolver.]

"A. This State's Exhibit 12. [This exhibit was labeled by a clerk 'bullet shell' but is a fired bullet.] Incidentally, this bullet is somewhat too damaged for a positive comparison with the test fires. It

does have similar markings and it probably was fired by this revolver.

"MISS WIENER [THE PROSECUTOR]: At this time I would like to introduce State's Exhibits 11 and State's Exhibit 12 into evidence.

"MRS. VERSHUM [DEFENSE COUNSEL]: No objection, Your Honor.

"THE COURT: They will be received.

"* * * * *. .

"MISS WIENER: I have no further questions of this witness, Your Honor.

"THE COURT: You may cross examine.

"MRS. VERSHUM: No questions, Your Honor."

The expert did not say that the markings on the death bullet and the test bullets were the same or that it was his opinion they were from the same gun. No comparison pictures of them were introduced in evidence, which might have cured the evidentiary defect. The bullet taken from the deceased (Exhibit 10) and one bullet taken from the ceiling (Exhibit 12) were received in evidence, but no bullet test fired from the gun was ever identified or offered. The expert did say, "* * * I made comparison * * *" of the bullets (test fired bullets and the one from the deceased) and then said, "* * * This was accomplished * * *." This standing alone could as well mean that, on comparison, the bullet's markings were not the same, as that they were the same. Apparently everyone in the courtroom took this language to mean that the markings on the bullets were the same, for in his oral findings the trial judge said:

"* * * [A]nd the ballistics show that the bullet which killed Mr. Mandler was fired from that gun."

And defense counsel in response to that remark said:

"I don't think that there is any question about that, Your Honor."

There was no defense objection at any time that could have alerted the judge to the defects in the state's presentation of this evidence. Nevertheless, lack of objection cannot take the place of evidence. The transcript we have does not support the court's finding except for the additional testimony of the expert about the markings on the bullet taken from the ceiling, quoted above. That came immediately after the imprecise testimony, and when the testimony about the two comparisons are considered together, it becomes apparent that similarity of markings was the whole subject of the expert's testimony. The inference drawn by the trial judge was apparently based upon this evidence taken as a whole. We do the same, and conclude from all of the evidence, as did the trial judge, that the evidence proved the charge, namely, that the boy while committing first degree robbery "intentionally" caused the death of the victim. *See* ORS 41.080, 41.110, 41.-120.[1]

Affirmed.

---

[1] "Indirect evidence is that which tends to establish the fact in dispute by proving another, and which, though true, does not of itself conclusively establish that fact, but affords an inference or presumption of its existence. For example, a witness proves an admission of the party to the fact in dispute. This proves a fact, from which the existence of fact in dispute in inferred." ORS 41.080.

"Satisfactory evidence is that which ordinarily produces moral certainty or conviction in an unprejudiced mind. It alone will justify a verdict. Evidence less than this is insufficient evidence." ORS 41.110.

"Indispensable evidence is that without which a particular fact cannot be proved." ORS 41.120.